STATE *ex rel.* DAVID WESLEY WATSON

*v.*

THE HONORABLE C. W. FERGUSON, III,

*Judge, Etc.*

(No. 14995)

Decided December 19, 1980.

*Larry A. Bailey, David Lycan, and William L. Redd* for relator.

*Chauncey H. Browning,* Attorney General, *Richard L. Earles,* Assistant Attorney General, for respondent.

MILLER, JUSTICE:

We granted this original writ of prohibition to consider again the scope of our double jeopardy clause[1] in light of our decisions in *State ex rel. Johnson v. Hamilton,* 164 W. Va. 682, 266 S.E.2d 125 (1980), and *State ex rel. Dowdy v. Robinson,* 163 W. Va. 154, 257 S.E.2d 167 (1979). In Syllabus Point 1 of both cases, we concluded that a defendant was entitled to assert a claim of double jeopardy under both the "same evidence" and the "same transaction" tests, and "whichever test affords the defendant the greater protection must be applied."[2]

In the present case, the defendant was charged by the grand jury of Wayne County with the murder of four persons in the early morning hours of June 25, 1979. Three of the victims were killed in one bedroom, and the fourth in a nearby hallway. Each of the victims was killed by multiple blows from a metal bar wielded by the defendant. The victims were a woman and two children plus a playmate of one of the children. All were killed in their beds

---

[1] West Virginia Constitution, Article III, § 5, in material part, states: "[N]or shall any person, in any criminal case, . . . be twice put in jeopardy of life or liberty for the same offence."

[2] The complete text of the Syllabus Point is:

"In West Virginia the term 'same offence' [sic] as used in the double jeopardy provision of *W. Va. Const.,* art. 3, § 5 shall be defined by either the 'same evidence test' which provides that offenses are the same unless one offense requires proof of a fact which the other does not, or the 'same transaction test' which provides that offenses are the same if they grow out of a single criminal act, occurrence, episode or transaction; therefore, whichever test affords the defendant the greater protection must be applied."

in the same bedroom with the exception of an eight-year-old child who was killed in the hallway outside of his bedroom. Prior to the first trial on April 7, 1980, defense counsel moved the court to try all four murder charges in the same proceeding, citing Syllabus Point 2 of *State ex rel. Johnson v. Hamilton, supra,* which held:[3]

> "Appropriate protection against multiple trials for offenses arising from the same criminal transaction requires, in future cases, joinder for trial at the same time of all counts arising out of the same transaction either in a single indictment with multiple counts or multiple separate indictments; however, the defendant may move for severance of separate offenses and waive a future plea of double jeopardy, and if severance is granted by the Court, after defendant's showing of good cause for such severance, the defendant may be tried separately for each separate offense."

The trial court declined to give a unitary trial for the four murder charges. The defendant was brought to trial on one of the charges and was convicted of first degree murder without a recommendation of mercy. Thereafter, the lower court set a trial date for the next murder trial. The defendant then sought this writ of prohibition to prevent the trial on the basis that jeopardy had attached under *Johnson* and, therefore, further trials were precluded.

There can be little doubt that *Dowdy* and *Johnson* made a primary change in our double jeopardy law by requiring that where the defendant committed multiple offenses arising out of the same transaction, he must be tried for these offenses in one trial.[4] *Johnson,* in effect, brought about a bifurcation in our constitutional concept of double jeopardy, since it recognized that a unitary trial could be required for multiple offenses resulting from the same

---

[3] The opinion in *State ex rel. Johnson v. Hamilton* was handed down on March 11, 1980. It is erroneously reported at 266 S.E.2d 125 that the case was decided on April 28, 1980.

[4] The majority in *Johnson* did provide a right for the defendant to move for separate trials. In the event it was granted there was "an automatic waiver of a subsequent plea of double jeopardy." (164 W. Va. at 688, 266 S.E.2d at 129.)

transaction, but that, nevertheless, "separate punishments may be imposed." Syllabus Point 3, in part, *State ex rel. Johnson v. Hamilton.*[5]

Prior to *Johnson,* we had considered our State double jeopardy clause to be rather coextensive with the federal concept of double jeopardy embodied in the Fifth Amendment to the United States Constitution.[6] In *Conner v. Griffith,* 160 W. Va. 680, 238 S.E.2d 529 (1977), we patterned Syllabus Point 1, relating to the scope of our double jeopardy clause, upon double principles found in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Syllabus Point 1 of *Conner* states:

> "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense."

*See also State v. Holland,* 149 W. Va. 731, 143 S.E.2d 148 (1965); *State ex rel. Zirk v. Muntzing,* 146 W. Va. 878, 122 S.E.2d 851 (1961); *State v. Kiger,* 103 W. Va. 55, 136 S.E. 607 (1927); *Ex Parte Bornee,* 76 W. Va. 360, 85 S.E. 529 (1915).

The United States Supreme Court has never considered that for double jeopardy purposes, there should be a difference between multiple trials and multiple punishments for the same offense. As stated in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187, 194-95 (1977):

> "If two offenses are the same under this test for purposes of barring consecutive sentences at a

---

[5] The entire Syllabus Point 3 states:

"Although under double jeopardy principles the proper procedure is a trial of all offenses arising out of the same 'criminal transaction' jointly, separate punishments may be imposed for separate offenses arising out of a single criminal transaction."

[6] The material portion of the Fifth Amendment is:

"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

single trial, they necessarily will be the same for purposes of barring successive prosecutions. See *In re Nielsen*, 131 U.S. 176, 187-188, 9 S.Ct. 672, 675-676, 33 L.Ed. 118 (1889); cf. *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. . . ."

The reason advanced in *Johnson* for such a separation was the necessity of protecting the defendant against the time and expense of defending against multiple trials. *Johnson* echoed earlier remarks contained in *Dowdy*, 257 S.E.2d at 170, where the Court quoted from *Green v. United States*, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957):

"[R]epeated attempts to convict an individual for an alleged offense [is] thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

The key language from *Green*, however, is the "repeated attempts to convict an individual for *an alleged offense*" (emphasis added), under which multiple punishments would seem to be as impermissible as multiple trials. The historical question in this area of double jeopardy is as we stated in Note 5 of *State ex rel. Betts v. Scott*, 165 W. Va. 73, 267 S.E.2d 173, 176 (1980):

"Double jeopardy in the traditional sense is concerned with the defendant being retried for the same offense after he had earlier been convicted or acquitted on the offense. The focus in this area has been how to define 'the same offense' and whether lesser included offenses are covered. See *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)."

We also pointed out in *Betts* that while the concerns expressed in *Green v. United States, supra,* as to the anxiety, insecurity, embarrassment and expense of multiple trials may be legitimate considerations, they do not ultimately resolve all the complex issues arising in double jeopardy cases:[7]

> "These beguiling labels tend to obscure the fact that the Double Jeopardy Clause has never been thought to mean that a defendant may never be subjected to more than one trial no matter how complete the first trial, or regardless of the terms upon which it was terminated, and irrespective of whether it was reversed on appeal." 267 S.E.2d at 178.

Moreover, there is a certain legal sophistry in constructing a double jeopardy system that requires a single trial for multiple offenses arising out of the same transaction but permits multiple punishments for those offenses if convictions occur in the unitary trial. It is small comfort to the accused to be spared the anxiety and expense of multiple trials only to learn that he can receive multiple punishments arising out of convictions for the multiple offenses being tried in a single trial.

A more workable approach is to permit from a procedural standpoint the prosecution of multiple offenses by way of a single trial as is permitted by Rule 8(a) of the Federal Rules of Criminal Procedure.[8] This approach would enable the defendant to be tried on all offenses of the same or similar character or arising from the same transaction. Many states have adopted this type of procedural rule by statute. *State v. Jones,* 120 Ariz. 556, 587 P.2d 742 (1978);

---

[7] *State ex rel. Betts v. Scott,* 165 W. Va. 73, 267 S.E.2d 173 (1980), dealt with another aspect of the double jeopardy principle, that is what type of a midtrial break would give rise to a double jeopardy bar.

[8] "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 8(a), Federal Rules of Criminal Procedure.

*State v. Piland,* 217 Kan. 689, 538 P.2d 666 (1975); *State v. Baker,* 524 S.W.2d 122 (Mo. 1975); *State v. Gotfrey,* 598 P.2d 1325 (Utah 1979); *State v. Smith,* 74 Wash.2d 744, 446 P.2d 571 (1968), *vacated on other grounds,* 408 U.S. 934, 92 S.Ct. 2852, 33 L.Ed.2d 747 (1972). We have evolved a somewhat analogous joinder rule through case law and by virtue of certain statutes. *E.g.,* W. Va. Code, 61-3-12; W. Va. Code, 62-2-5; W. Va. Code, 62-2-24; *State v. Cutlip,* 131 W. Va. 141, 46 S.E.2d 454 (1948); *State v. Masters,* 106 W. Va. 46, 144 S.E. 718 (1928).

Several courts have concluded that the problem of multiple trials can be solved to a large degree by a joinder rule that requires multiple offenses to be tried together unless the defendant moves for a severance. In *State v. Gregory,* 66 N.J. 510, 333 A.2d 257 (1975), after an extensive review of its prior double jeopardy cases, the court concluded that it would establish under its inherent rule-making power a procedural rule modeled after Subsection 1.07(2) of the American Law Institute's Model Penal Code.[9] *See also Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139; *State v. Brown,* 262 Or. 442, 497 P.2d 1191 (1972), *overruled on other grounds, State v. Hammang,* 271 Or. 749, 534 P.2d 501 (1975).

These cases in essence adopt a mandatory procedural joinder rule and to this extent on a procedural level comport with *Johnson's* goal of requiring the defendant to

---

[9] Subsection 1.07(2) and its related Subsection 1.07(3) are:

"(2) *Limitation on Separate Trials for Multiple Offenses.* Except as provided in Subsection (3) of this Section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

"(3) *Authority of Court to Order Separate Trials.* When a defendant is charged with two or more offenses based on the same conduct or arising from the same criminal episode, the Court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires."

be tried in a unitary trial for multiple offenses arising out of the same transaction in order to avoid the harassment and anxiety of multiple trials. They provide a more rational basis, by a procedural rule, for accomplishing the result sought in *Johnson, supra,* and produce a number of important benefits that are lacking in the constitutional rule formulated in *Johnson.*

First, we can still accomplish the primary aim of *Johnson,* which is to require the defendant to be tried in a single trial on similar offenses or multiple offenses arising out of the same transaction. Second, the defendant can still retain his traditional right to move for a severance because of prejudicial joinder,[10] as was permitted in *Johnson,* but since the joinder rule will be procedural in nature, we are not confronted with the problem of the constitutional waiver of double jeopardy that existed under *Johnson.*[11]

Third, adopting a procedural rule permits some flexibility in its application, since we will not be bound by the rigidity of a constitutional doctrine. It must be stressed, however, that any procedural rule on joinder is not designed to supplant the constitutional double jeopardy doctrine, since this latter doctrine will ultimately determine whether two related offenses are the "same offense" for double jeopardy purposes, which if so found will

---

[10] The granting of a motion for severance for prejudicial joinder rests within the sound discretion of the trial court. *E.g., State v. Koton,* 157 W. Va. 558, 202 S.E.2d 823 (1974); *see State v. Tabet,* 136 W. Va. 239, 67 S.E.2d 326 (1951).

[11] The majority in *Johnson* permitted the defendant to move for a severance where multiple offenses were joined in a single trial. If the severance was granted, the defendant would be deemed to "waive a future plea of double jeopardy." Syllabus Point 2, in part. However, the United States Supreme Court has taken a forceful position against applying waiver of the constitutional right to double jeopardy, holding that even a counseled guilty plea would not waive the right to subsequently raise the double jeopardy plea. *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). Most courts follow the view that because of the fundamental nature of the double jeopardy right, a claim of waiver will be closely scrutinized. See, *e.g., United States v. Anderson,* 514 F.2d 583 (7th Cir. 1975); *Oksanen v. United States,* 362 F.2d 74 (8th Cir. 1966); *State v. Cain,* 324 So.2d 830 (La. 1975); *Brice v. State,* 254 Md. 655, 255 A.2d 28 (1969).

preclude not only separate trials but also separate punishments.

Fourth, in setting a procedural joinder rule, it can be designed to permit a broader right of joinder than was heretofore available. Its scope can be broader than the double jeopardy test for the same offense, since its purpose is to alleviate the harrassment and expense that result to a defendant by reason of separate trials for related offenses.

Finally, such a procedural rule on joinder will abolish the bifurcation of our double jeopardy doctrine brought about by *Johnson*. As we have discussed earlier, the historical concept of double jeopardy centered on what is the same offense. Once it was determined that the offenses were the same, then there could only be one trial and one punishment for that offense. *Johnson* required that all related offenses be tried in one trial even though if separate convictions were obtained on the various counts at the trial, separate punishments could be imposed. Thus, there was created a dichotomy between trial and punishment concepts in our double jeopardy doctrine.

In light of the foregoing salutary goals and under our inherent rule-making power,[12] we conclude that a defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transactions, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan.[13] To the extent that *State ex rel. Johnson v. Hamilton*, 164 W. Va. 682, 266 S.E.2d 125 (1980), set the rule as a constitutional holding, it is disapproved.

---

[12] *State v. Byrd*, ____ W. Va. ____, 256 S.E.2d 323 (1979); *State v. Gary*, 162 W. Va. 136, 247 S.E.2d 420 (1978); *State v. Bolling*, 162 W. Va. 103, 246 S.E.2d 631 (1978); *Stern Bros., Inc. v. McClure*, 160 W. Va. 567, 236 S.E.2d 222 (1977); *State ex rel. Partain v. Oakley*, 159 W. Va. 805, 227 S.E.2d 314 (1976).

[13] There is an obvious qualification to this rule, in that offenses which are unknown to the prosecuting attorney or not committed within the same county are not subject to this joinder rule.

It should be stressed that our new procedural rule does not answer the ultimate double jeopardy question of when two or more offenses are so similar that they constitute the "same offense" such that under double jeopardy principles both multiple trials and punishments are prohibited. *Johnson* and its precursor *Dowdy* did not attempt to answer this question except in a most general way by stating that the Court would apply "either the 'same evidence test' which provides that offenses are the same unless one offense requires proof a fact which the other does not, or the 'same transaction test' which provides that offenses are the same if they grow out of a single criminal act, occurrence, episode or transaction ... whichever test affords the defendant the greater protection." (Syllabus Point 1, in part, *State ex rel. Johnson v. Hamilton, supra,* and *State ex rel. Dowdy v. Robinson, supra.*)

It is probably not possible to formulate any detailed test for determining what constitutes the same offense for double jeopardy purposes. Certainly courts and commentators are in disagreement not only as to the exact formulation for such tests but also as to the basic policies underlying the double jeopardy clause.[14]

---

[14] Justice Blackmun, writing for the majority in the recent case of *United States v. Di Francesco,* ___ U.S. ___, 49 U.S.L.W. 4022, 4025-26, 101 S.Ct. 426, 431-33, 66 L.Ed.2d 328, 339-42 (1980), identifies some fifteen principles relating to the double jeopardy clause.

Westen & Drubel, *Toward A General Theory of Double Jeopardy,* 1978 Sup. Ct. Rev. 81, 84, makes the statement that: "the principle of double jeopardy serves not one, but three distinct interests . . .: (1) an interest in finality . . . (2) an interest in avoiding double punishment . . . (3) an interest in nullification - *viz.,* an interest in allowing the system to acquit against the evidence." Carroway, *Pervasive Multiple Offense Problems—A Policy Analysis,* 1971 Utah L. Rev. 105, 107, summarizes the double jeopardy policy as:

"Other courts have expressed these basic policy notions, though not frequently. The added expense and ordeal includes not only expenses involved to the defendant but also the time and resources of the prosecutors, judges and witnesses—in short against any expense, time or substantial inconvenience to the system of administering criminal justice."

Another version is found in a Comment from 75 Yale L. J. 262, 266-267 (1965):

Part of the confusion might be resolved by a frank recognition that the double jeopardy clause embraces a number of diverse concepts which cannot be packaged under one formulation.[15] Once this diversity is acknowledged then the task becomes one of defining the policy considerations that underlie the given area of double jeopardy that are involved in the case at hand. Here we are

---

"Several policies underlie the double jeopardy prohibition. First, guilt should be established by proving the elements of a crime to the satisfaction of a single jury, not by capitalizing on the increased probability of conviction resulting from repeated prosecutions before many juries. ... Second, the prosecutor should not be able to search for an agreeable sentence by bringing successive prosecutions for the same offense before different judges. ... Third, criminal trials should not become an instrument for unnecessarily badgering individuals. ... Finally, judges should not impose multiple punishment for a single legislatively defined offense. ..."

[15] The inquiry of whether double jeopardy attaches after there is a midtrial break that ends the first trial does not focus on whether the second trial involves the "same offense" as the first trial, since it is the same offense that is involved in the retrial. The critical question is under what circumstances the first trial aborted and in particular whether it was aborted by reason of prosecutorial or judicial "bad faith," including evidentiary insufficiency. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *State ex rel. Betts v. Scott*, 165 W. Va. 73, 267 S.E.2d 173 (1980). The "dual sovereignty" area does not primarily involve whether the offenses are the same but rather whether the relationship between the respective sovereigns is independent. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (independent prosecutions by federal and state governments not prohibited by double jeopardy); *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (separate prosecutions by state and a municipality for same offense prohibited by double jeopardy); *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (Indian tribal court conviction does not preclude federal prosecution for same offense); cf. *Thompson v. United States*, 444 U.S. 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980) (Department of Justice *"Petite"* policy, prohibiting federal prosecutions after state prosecutions). Where the issue involves a construction of statutory offenses, the United States Supreme Court will often resolve the "same offense" problem under a rule of lenity in construing the applicable statute. *E.g., Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

confronted with a double jeopardy issue that involves multiple homicides committed over a relatively short period of time.

In any analysis of the policies underlying double jeopardy in the area of offenses against multiple victims, it must be recognized that criminal culpability cannot be answered merely by looking at the shortness of the time frame. Some consideration must be given to the defendant's criminal acts and intent. We do not conceive that in fashioning a double jeopardy policy in regard to what is the "same offense" that we can ignore the fact that multiple victims have been the subject of the defendant's acts. There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of another to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some porportion not only to the magnitude of the crime but also to the number of victims involved. These are fundamental considerations that society expects from a criminal justice system.

Other courts have spoken to these concerns in analyzing multiple offenses under double jeopardy principles. In *Davenport v. State,* 543 P.2d 1204, 1209 (Alaska 1975), the court stated that:

> "Specifically, we are concerned with the increased harm or propensity for harm which inheres in a multiple victim robbery. As the dignity and sensibilities of each individual are affronted, the possibility of violence or bodily injury to one or more of the persons present increases. In addition, we are mindful that each victim of a robbery, as an individual, quite probably suffers fear, anxiety, and resentment as the result of this crime against his or her person."

Justice Traynor stressed the increased culpability arising from multiple offenses in *Neal v. State,* 55 Cal.2d 11, 20, 9 Cal. Rptr. 607, 612, 357 P.2d 839, 844 (1960), *cert. denied,* 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961):

"A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person."

While *Dowdy* and *Johnson* set our double jeopardy test as either the "same evidence" or "same transaction" test, whichever is more beneficial to the defendant, this rule was adopted without any citation to our prior case law.[16] We believe, however, that based on an analysis of our prior case law the *Dowdy-Johnson* formulation is not inconsistent.

We have not adopted the narrow early common law view that looks only to the indictment language[17] but have considered whether the "evidence necessary to support [a conviction on] the second indictment would have been

---

[16] Although there may initially appear to be some incongruity in utilizing both tests for our double jeopardy standard, the "same evidence" test will be more applicable in those cases where the question is whether two closely related offenses are in fact the same upon analyzing their component elements. On the other hand, the "same transaction" test becomes more relevant when multiple offenses occur at or near the same time or as a part of a common scheme or plan.

[17] This test comes from *The King v. Vandercomb & Abbott*, 2 Leach 708, 720, 168 Eng. Rep. 455, 461 (1796), where the language of the first indictment is compared with the language of the second indictment and if it could be concluded that the facts set out in the second indictment could not result in a conviction on the first indictment, jeopardy did not bar the second trial. *Vandercomb's* test has been rather universally criticized as being unduly formalistic since the language of an indictment may not be identical to the facts proven at trial. Carroway, *Pervasive Multiple Offense Problems—A Policy Analysis*, 1971 Utah L. Rev. 105, 107-119; Lugar, *Criminal Law, Double Jeopardy and Res Judicata*, 39 Iowa L. Rev. 317 (1954); Kirchheimer, *The Act, the Offense and Double Jeopardy*, 58 Yale L.J. 513, 527-34 (1949). The English courts have abandoned the *Vandercomb* test by adopting the "same transaction" test. *See Connelly v. Director of Public Prosecutions*, [1964] A.C. 1254.

sufficient to procure a legal conviction upon the first."
Syllabus Point 5, in part, *State v. Friedley,* 73 W. Va. 684, 80
S.E. 1112 (1914).[18] In regard to whether one offense includes
the other, we held in *State ex rel. Zirk v. Muntzing,* 146 W.
Va. 878, 122 S.E.2d 851 (1961), that an acquittal on the
charge of conspiracy to commit murder would preclude a
subsequent trial for murder of the same person. *Zirk*
quoted with approval from *State v. Mowser,* 92 N.J.L. 474,
483-84, 106 A. 416, 420 (1919):

> "The principle to be extracted from well-
> considered cases is, that by the term same offence
> is not only meant the same offence as an entity and
> designated as such by legal name, but also any
> integral part of such offence which may subject an
> offender to indictment and punishment. *Reg. v.
> Walker,* 2 Moody & R. 457; *Rex v. Stanton,* 5 Cox C.C.
> 324.

> "When such integral part of the principal offence
> is not a distinct affair, but grows out of the same
> transaction, then an acquittal or conviction of an
> offender for the lesser offence will bar a prosecu-
> tion for the greater." 146 W. Va. at 888, 122 S.E.2d
> at 857.

---

[18] This test is essentially the "same evidence" test which has been
utilized by the United States Supreme Court as the *Blockburger Rule,*
and reaffirmed in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221,
2225-26, 53 L.Ed.2d 187, 194 (1977):
"The established test for determining whether two offenses are
sufficiently distinguishable to permit the imposition of cumulative
punishment was stated in *Blockburger v. United States,* 284 U.S.
299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):
" 'The applicable rule is that where the same act or transaction
constitutes a violation of two distinct statutory provisions, the
test to be applied to determine whether there are two offenses or
only one, is whether each provision requires proof of a fact which
the other does not. . . .'
"This test emphasizes the element of the two crimes. 'If each
requires proof of a fact that the other does not, the *Blockburger*
test is satisfied, notwithstanding a substantial overlap in the
proof offered to establish the crimes. . . .' *Ianelli v. United States,*
420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 (1975)."
[432 U.S. at 166, 97 S.Ct. at 2225-26, 53 L.Ed.2d at 194.]

In *State v. Houchins*, 102 W. Va. 169, 134 S.E. 740 (1926), we were confronted with a double jeopardy plea where the defendant Houchins had been assaulted and believed that she was in danger of being killed or subjected to great bodily harm. She fired two shots at her assailant but missed and killed two bystanders, Lewis Romans and Emma Carter. The defendant Houchins was first tried for the Carter killing and was acquitted. Subsequently, she was brought to trial for killing Romans and her plea of double jeopardy was rejected. After her conviction for voluntary manslaughter, she appealed. In upholding her double jeopardy plea, we stated:

> "We think that the facts pleaded bring the case within what is regarded as an exception to the general rule, that the conviction or acquittal of one charged with the murder of, or assault upon, one person, is not a bar to his subsequent prosecution for the murder of, or assault upon, another person at the same time. .... [T]he well recognized exception to the general rule [is] where the double killing is the result of one shot or stroke directed by a single act or volition towards one person. ...."
> 102 W. Va. at 176-77, 134 S.E. at 743.

*Houchins'* result was perhaps foreshadowed in our earlier case of *State v. Evans*, 33 W. Va. 417, 10 S.E. 792 (1890), where we declined to uphold a double jeopardy plea. In *Evans*, the defendant shot two individuals and had been acquitted at the first homicide trial. He attempted to bar the second trial by asserting double jeopardy, but we concluded that each killing constituted a separate act.[19] We did recognize at least hypothetically that a person could commit one act which might cause the death of several persons, but still be tried for only one offense:

> "A case can be conceived where such a plea might be held good. For example, the engineer of a

---

[19] "The killing was the result of a separate act in each case, committed under degrees of provocation not necessarily identical, accompanied by apprehensions not necessarily the same. *In fine*, every element to constitute two separate offences appears on the face of the plea to exist in th[is] case, and therefore the demurrer was properly sustained." 33 W. Va. at 420, 10 S.E. at 793.

railway train might be charged with negligently and feloniously causing the death of one passenger in a wreck, and, being tried and found by the jury entirely blameless for the accident, such acquittal might, perhaps, constitute a perfect defense to a subsequent indictment for killing another passenger, who was on the same train." 33 W. Va. at 419-20, 10 S.E. at 793.

Although the double jeopardy principle did not determine *Myers v. Murensky*, 162 W. Va. 5, 245 S.E.2d 920 (1978), its implications were recognized when we decided that our negligent homicide statute, W. Va. Code, 17C-5-1(a), must be construed to create only one criminal offense "regardless of the number of deaths proximately caused by the single act of operating a motor vehicle." (Syllabus Point 3, in part).

We believe that *Houchins* and *Zirk* demonstrate that we have not confined our double jeopardy test to the same evidence but have broadened it to include a transactional test at least to the extent in *Houchins* that if two persons are killed by the single volitive act of another, such homicides would be treated as a single transaction for jeopardy purposes.[20]

The key to *Houchins* and the present case lies not in a mechanical solution relating to proximity in time but rather an analysis of the conduct and intent of the defendant. Here there is no contention that the multiple homicides occurred as a result of a single volitive act on the part of the defendant, but rather each was killed by sequential acts of the defendant moving from one victim to another, striking them with the tire lug wrench. Thus, where multiple homicides occur even though they are in close proximity in time, if they are not the result of a single volitive act of the defendant, they may be tried and

---

[20] Under the "same evidence" test, *Houchins'* result could be questioned because the identity of each victim was different, and thus to this extent the proof of essential facts would be different. Based on the *Houchins* case, we are aligned by one commentator with several other states who have adopted a form of the "same transaction" test. Note, *Double Jeopardy and the Concept of Identity of Offenses*, 7 Brooklyn L. Rev. 79, 84 (1937).

punished separately under the double jeopardy clause of Article III, Section 5 of the West Virginia Constitution.

*Houchins* contains a number of cases from other jurisdictions which support this rule, as do the following more recent cases. *E.g., Ciucci v. Illinois,* 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1958); *People v. Carlson,* 37 Cal. App.3d 349, 112 Cal. Rptr. 321 (1974); *State v. Richmond,* 284 So.2d 317, 320-22 (La. 1973); *State v. Johnson,* 530 S.W.2d 690, 694 (Mo. 1975); *Gibson v. State,* 512 P.2d 1399 (Okl. Crim. 1973); *Scott v. State,* 490 S.W.2d 578 (Tex. Crim. App. 1973).[21]

For the foregoing reasons, we decline to award a writ of prohibition restraining the petitioner's trial, and, therefore, the writ of prohibition is denied.

*Writ Denied*

NEELY, JUSTICE, *dissenting:*

The majority opinion in this case causes the pronouncement of the historian, James Morris, about the early speeches of Mr. Gladstone to leap instantly to mind: "They were at the same time learned and incomprehensible."

After several readings of the majority opinion it appears to me that it stands for the following propositions: (1) the same transaction test is a good idea and should be part of our law, in fact, it has been applied in the past and will be applied in the future; (2) people who commit multiple murders are not nice people; (3) the same transaction test is either procedural or constitutional depending on the judge who writes the opinion; and (4) this particular multiple murderer is not a nice person and, therefore, we will not apply the same transaction test in his case so that we can punish him some more.

---

[21] The rule that multiple homicides occurring at approximately the same time may be separately punished if they result from separate volitive acts is a part of the more general principle that crimes against more than one person, although relatively close in time, may be separately tried and punished. *E.g., Davenport v. State,* 543 P.2d 1204 (Alaska 1975) (robbery); *State v. Salazar,* 24 Ariz. App. 472, 539 P.2d 946 (1975) (battery); *Cousins v. State,* 277 Md. 383, 354 A.2d 825 (1976), *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (assault); *State v. Jones,* 85 N.M. 426, 512 P.2d 1262 (Ct. App. 1973) (rape); *Smith v. State,* 517 S.W.2d 757 (Tenn. Crim. App. 1974) (narcotics selling).

I have no particular quarrel with the Court's sentiment concerning this defendant; certainly, multiple murderers have never been among my favorite defendants. My primary objection comes from some romantic notion which I learned in law school about the law being uniformly applied to all persons similarly situated. The protection in our legal tradition against vexatious criminal litigation is certainly embodied in the federal and state constitutional provisions on double jeopardy. I have never found any magic in the term "constitutional" since the preeminent axiom of all jurisprudence is that no rule determines its own application. The fact that one judge calls something unconstitutional does not mean that the next judge may not call it constitutional. As I pointed out in *State ex rel. Johnson v. Hamilton*, 164 W.Va. 682, 266 S.E.2d 125 (1980) the English have accomplished the same result concerning the same transaction test under the doctrine of *autrefois convict*.

It is also worth noting that in the case before us the defendant made a motion to have all of the indictments joined in one trial so that he would be required to go through the trial process only once. I recognize that today the courts are so outrageously capricious that it is highly likely that any conviction for a heinous crime like multiple murders will be overturned a decade from now by an arbitrary judge applying some new permutation of "constitutional principles." The prosecution, indeed, has some guarantee that with four separate convictions the process of releasing this defendant once more upon an unsuspecting world because of a new legal theory will be reduced by a factor of four. That, however, is the fault of our current system of criminal jurisprudence which, I might point out, has not in any regard been helped in the last several years by the majority of this Court. It is not the defendant's obligation to provide the State or the courts with an insurance policy against his ultimate release by judicial caprice, and multiple murderers have as much right as drunk drivers to protection against vexatious litigation.