329 S.E.2d 882

**STATE ex rel. Danny LEHMAN**

v.

**Hon. Elmer STRICKLER, Judge, etc., and W. Joseph McCoy, Commr., etc.**

**No. 16571.**

Supreme Court of Appeals of West Virginia.

April 18, 1985.

John R. Mitchell, Joseph C.S. Cometti, Charleston, for appellant.

Andrew Lopez, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Justice:

Danny Lehman is currently serving three consecutive sentences in the West Virginia Penitentiary at Moundsville. The first sentence is life without mercy for the crime of first degree murder. The second sentence is for two to ten years for the crime of malicious wounding. The third sentence is for a term of life with mercy for the crime of aggravated robbery.

---

In his petition for habeas corpus, Mr. Lehman contends that he was denied effective assistance of counsel at his trial. He raises a double jeopardy issue based on his conviction and sentencing for both felony murder and the underlying felony of aggravated robbery. A further ground relates to his incarceration in the segregation unit at Moundsville, which he believes constitutes cruel and unusual punishment because he is denied exercise, visitation, and access to educational and rehabilitational programs, as well as being exposed to unsanitary prison conditions. Finally, he argues that he was transferred from the general population to segregation without regard for his due process rights.

Mr. Lehman's offenses were committed during a dispute between members of two rival motorcycle groups, the Avengers and the Mofo Men. The Avengers are a local group active in Nicholas, Raleigh, and Fayette Counties. The Mofo Men are allegedly a front for the Hell's Angels, an organization trying to expand its influence in this area.

On the day of the killing in December, 1980, Kip Dooley and Harry Neal, two members of the Mofo Men, invited the petitioner and a few other members of the Avengers to their clubhouse to party and discuss the territorial rivalry between the two groups. After eating some deer steaks, the petitioner took Kip Dooley's and Harry Neal's "colors" (motorcycle vests with gang patches) at gunpoint. He also shot both men, killing Dooley and seriously injuring Neal.

After trial, the petitioner was convicted of the aggravated robbery of Harry Neal, the malicious wounding of Harry Neal, and the felony murder of Kip Dooley.

In previous decisions, we have held that separate trials or punishments for both felony murder and the underlying felony violate state and federal principles of double jeopardy. See Syllabus Point 8, State v. Williams, 172 W.Va. 295, 305 S.E.2d 251 (1983); Syllabus, State ex rel. Hall v. Strickler, 168 W.Va. 496, 285 S.E.2d 143 (1981); accord Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

The double jeopardy question in this case thus resolves itself to this: In forcibly taking the motorcycle vests of Kip Dooley and Harry Neal, did the petitioner commit one aggravated robbery or two? If the answer is two, there is no double jeopardy problem in convicting the petitioner of the aggravated robbery of one victim and the felony murder of the other. If, however, the takings constitute one robbery, there would be a double jeopardy violation.

Although this precise question has not been addressed by this Court, there are cases in this jurisdiction which shed some light on the issue. In Syllabus Point 5 of State v. Flint, 171 W.Va. 676, 301 S.E.2d 765 (1983), and Syllabus Point 2 of State ex rel. Watson v. Ferguson, 166 W.Va. 337, 274 S.E.2d 440 (1980), we held that multiple homicides which did not result from a single volitive act could be separately tried and punished, even though they occurred within a very short period of time. See also Syllabus Point 2, State v. Myers, 171 W.Va. 277, 298 S.E.2d 813 (1982) (under the negligent homicide and involuntary manslaughter statutes, a defendant may receive as many sentences as the number of deaths he has wrongfully caused).

In Ferguson, we explained that "[t]he rule that multiple homicides occurring at approximately the same time may be separately punished if they result from separate volitive acts is a part of the more general principle that crimes against more than one person, although relatively close in time, may be separately tried and punished." 166 W.Va. at 353, 274 S.E.2d at 448 n. 21.[1] Among the authorities we cited

---

1. In analyzing "the policies underlying double jeopardy in the area of offenses against multiple victims," we said that:

"There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of another to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some proportion not only to the magnitude of the crime but also to the number of victims involved. These are fundamental considerations that society expects from a criminal justice system." Ferguson, 166 W.Va. at 348, 274 S.E.2d at 446.

in support of this proposition was *Davenport v. State*, 543 P.2d 1204 (Alaska 1975), a case involving multiple robberies. We also recognized this general rule in *Myers*, where we said that "[w]hen a crime is committed against people rather than property, the general rule is that there are as many offenses as there are individuals involved." 171 W.Va. at 279, 298 S.E.2d at 815.

Recently in Syllabus Point 2 of *State v. Collins*, 174 W.Va. 767, 329 S.E.2d 839 (1984), we held that "an attempt to rob a store by presenting a firearm and leaving without taking any property can[not], in light of double jeopardy principles, result in multiple convictions of attempted aggravated robbery for each clerk present in such store." In the course of that opinion, we were careful not to foreclose the possibility of multiple punishments where there were several completed robberies, and the property taken belonged to several different victims, instead of a single entity such as a bank or store. Indeed, we recognized the possibility of multiple punishments in those circumstances in footnote 12 where we said that: "[I]f other patrons of a business are also robbed, separate robbery convictions are permissible. *See, e.g., Richardson v. State*, 429 N.E.2d 229 (Ind.1981); *State v. Hutchison*, 228 Kan 279, 615 P.2d 138 (1980); *Morgan v. State*, 220 Tenn. 247, 415 S.W.2d 879 (1967)." 174 W.Va. at 774, 329 S.E.2d at 846.

The Supreme Court of the United States has spoken to this issue, holding in *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), that multiple trials and punishments are constitutionally permissible where several people are robbed at the same time and place. Most jurisdictions recognize that the robbery of several people constitutes several different offenses. *See, e.g., People v. Johnson*, 210 Cal. App.2d 273, 26 Cal.Rptr. 614 (1962); *Keeton v. Commonwealth*, 92 Ky. 522, 18 S.W. 359 (1892); *Smith v. State*, 23 Md.App. 177, 325 A.2d 902 (1974); *State v. Hardin*, 199 Neb. 314, 258 N.W.2d 245 (1977); *State v. Johnson*, 23 N.C.App. 52, 208 S.E.2d 206, *cert. denied*, 286 N.C. 339, 210 S.E.2d 59 (1974); *State v. Gratz*, 254 Or. 474, 461 P.2d 829 (1969); *Thompson v. State*, 90 Tex.Crim. 222, 234 S.W. 400 (1921); 22 C.J.S. *Criminal Law* § 298 at 788 (1961); 67 Am.Jur.2d *Robbery* § 48 at 55 (1973); Annot., 51 A.L.R.3d 693 (1973).

In *State v. Lane*, 629 S.W.2d 343 (Mo. 1982) (en banc), the court addressed almost the same issue facing us now. The court held that convicting a defendant of both a felony murder in connection with the attempted robbery of one victim and the robbery of a second victim did not violate the defendant's double jeopardy rights, although both offenses were perpetrated at the same time and place.

Based on our review of the relevant authorities, we conclude that when a defendant commits two separate aggravated robberies and in the course thereof kills one of the victims, he can be convicted of both the aggravated robbery of one victim and the felony murder of the other.

The other issues raised by the petitioner may be summarily addressed. After a review of the trial court record, we find no merit in his claim that he was denied effective assistance of counsel at trial. Similarly, his claim that he was transferred from the general prison population to segregation without regard for his due process rights is not supported by the record. The issue concerning the conditions at the Moundsville penitentiary is presently before this Court on a fully developed factual record in *Crain v. Bordenkircher*, No. 16646 (W.Va. appeal docketed March 5, 1985), and we decline to have a duplicate assessment in this case.

For the foregoing reasons, the writ sought is denied.

Writ Denied.