460 S.E.2d 657

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**D.E.G., Sr., Defendant Below, Appellant.**

**No. 22552.**

Supreme Court of Appeals of
West Virginia.

Submitted May 16, 1995.

Decided July 11, 1995.

Laura Ellen Buchko, Asst. Atty. Gen., Charleston, for appellee.

James S. Chase, Robinson & McElwee, Charleston, for appellant.

PER CURIAM:

The defendant in this case, D.E.G., Sr., received a sentence of fifteen to thirty-five years in the State penitentiary for first-degree sexual assault and fifteen years (as enhanced) in the State penitentiary for "use of minors in filming sexually explicit conduct." The two sentences were set to run consecutively. The defendant was also sentenced to from one to five years on a sexual abuse charge. The one-to-five-year sentence was imposed to run concurrently with the other sentences.

On appeal, the defendant claims that the trial court, under the particular facts of the case, erred in allowing the State to prosecute him on the sexual assault and the filming charges after he had pled guilty to the charge of sexual abuse growing out of the same transactional sequence. He also claims that the trial court committed a number of procedural errors in conjunction with his jury trial and sentencing on the assault and filming charges and erred in refusing to permit him to withdraw his guilty plea to the sexual abuse charge.

After reviewing the questions presented and the record filed, the Court believes that the trial court erred in allowing the State to prosecute the defendant on the sexual assault and filming charges. On the other hand, the Court does not believe the trial court erred in refusing to allow him to withdraw his plea to the sexual abuse charge. The defendant's sexual assault and filming convictions are, therefore, reversed, and the sexual abuse conviction is affirmed.

The evidence adduced in this case showed that a social worker learned that the defendant's nine-year-old son might have been sexually assaulted and/or abused by the defendant and the defendant's girlfriend, T.L. An investigation was conducted which suggested that the defendant, who was anxious that his son become sexually active early, or "be a man," had encouraged his (the defendant's) adult girlfriend to engage in sexual activity with the son, over the son's protests, in November, 1992. The evidence also suggested that while this was occurring, the defendant stood by and took photographs.

As a result of the investigation, the State obtained the return of a two-count indictment against the defendant on May 12, 1993. The indictment, numbered 93–F–34, charged the defendant with "aiding and abetting first degree sexual abuse" and with "sexual abuse by a parent, guardian or custodian." [1]

After the return of Indictment 93–F–34, the defendant entered into plea negotiations

---

1. Sexual abuse in the first degree is defined by W.Va.Code § 61–8B–7. That statute states, in relevant part:

(a) A person is guilty of sexual abuse in the first degree when:

(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or

\* \* \* \* \* \*

(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years.

The "sexual abuse by a parent, guardian or custodian" charge grew out of the prohibitions contained in W.Va.Code § 61–8D–5. The relevant provisions of that statute state:

(b) If any parent, guardian or custodian shall knowingly procure another person to engage in or attempt to engage in sexual exploitation of, or sexual intercourse, sexual intrusion or sexual contact with, a child under the care, custody or control of such parent, guardian or custodian when such child is less than sixteen years of age, notwithstanding the fact that the child may have willingly participated in such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, such parent, guardian or custodian shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not less than one thousand nor more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years.

with the State of West Virginia. Those negotiations resulted in a plea bargain agreement under which the defendant agreed to plead guilty to one count of first-degree sexual abuse in return for the State's dismissing the second count, the count involving sexual abuse by a parent, guardian, or custodian.

When the agreement was presented to the trial court, the prosecuting attorney outlined what the State's case would have been had the case gone to trial. In essence, he alleged that the State would have shown that the defendant encouraged and assisted his girlfriend, T.L., to engage in sexual conduct with his son.

The plea bargain was accepted, and, on August 6, 1993, the defendant pled guilty as provided in the agreement.

After the defendant pled guilty to sexual abuse, but prior to sentencing, a Fayette County grand jury, at the prosecuting attorney's instigation, returned another two-count indictment against the defendant on September 14, 1993. This indictment, styled Indictment 93–F–72, charged the defendant with engaging in "first degree sexual assault" and "use of minors in filming sexually explicit conduct." [2] This indictment arose out of the same events which occurred during the evening in November, 1992, which had led to Indictment 93–F–34.

After the return of the second indictment, counsel for the defendant asserted that trial on the charges contained in that indictment was barred by the fact that the defendant had already pled guilty to sexual abuse, a charge contained in the first indictment. He, in essence, argued that the State properly should have joined the sexual assault and filming charges in the first indictment and, having failed to do so, was barred by the defendant's guilty plea to sexual abuse from raising the charges in the second indictment. After a lengthy discussion of the question by the parties, the trial court denied the motion to dismiss the second indictment.

On December 6, 1993, a jury trial was conducted in the Circuit Court of Fayette County on the charges in the second indict-

---

**2.** West Virginia Code § 61–8B–3 defines sexual assault in the first degree. The portions of that statute relevant to the facts of the present case state:

> (a) A person is guilty of sexual assault in the first degree when:
> (1) Such person engages in sexual intercourse or sexual intrusion with another person
> . . .
>
> \*   \*   \*   \*   \*   \*
>
> (2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less.
> (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than fifteen nor more than thirty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than fifteen nor more than thirty-five years.

Importantly, W.Va.Code § 61–8B–1(7) defines "sexual intercourse" for the purposes of this statute as follows:

> (7) "Sexual intercourse" means any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person.

Use of minors in filming sexually explicit conduct is prohibited by W.Va.Code § 61–8C–2, which provides:

> (a) Any person who causes or knowingly permits, uses, persuades, induces, entices or coerces such minor to engage in or uses such minor to do or assist in any sexually explicit conduct shall be guilty of a felony when such person has knowledge that any such act is being photographed or filmed. Upon conviction thereof, such person shall be fined not more than ten thousand dollars, or imprisoned in the penitentiary not more than ten years, or both fined and imprisoned.
> (b) Any person who photographs or films such minor engaging in any sexually explicit conduct shall be guilty of a felony, and, upon conviction thereof, shall be fined not more than ten thousand dollars, or imprisoned in the penitentiary not more than ten years, or both fined and imprisoned.
> (c) Any parent, legal guardian or person having custody and control of a minor, who photographs or films such minor in any sexually explicit conduct or causes or knowingly permits, uses, persuades, induces, entices or coerces such minor child to engage in or assist in any sexually explicit act shall be guilty of a felony when such person has knowledge that any such act may be photographed or filmed. Upon conviction thereof, such persons shall be fined not more than ten thousand dollars, or imprisoned in the penitentiary not more than ten years, or both fined and imprisoned.

ment. At the conclusion of the trial, the jury found the defendant guilty of both first-degree sexual assault and use of a minor in filming sexually explicit conduct, as charged in the indictment.

The State then filed a recidivist information in which it sought enhancement of the defendant's sentences. Even though the defendant moved to dismiss the information, trial was held on it on January 27, 1994, and, at the conclusion of the trial, the defendant was found to be the same person who had previously been convicted of felonies in the State of Illinois in 1976. As a consequence, when the defendant was sentenced on the sexual assault and filming convictions, his sentence on the filming charge was enhanced under the recidivist statute.

In arguing on appeal that the trial court should not have allowed the State to prosecute him on the assault and filming charges contained in the second indictment, the defendant claims that the State was aware of the circumstances giving rise to those charges at the time of the return of the first indictment and that, among other things, the State ignored and violated the "mandatory joinder rule" in effect in this State.

■ The clearest statement of the "mandatory joinder rule" to which the defendant refers is contained in syllabus point 1 of *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440 (1980), in which it is said:

A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In a number of other cases, the Court reiterated this rule. *Gilkerson v. Lilly*, 169 W.Va. 412, 288 S.E.2d 164 (1982); *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981); *State v. Shafer*, 168 W.Va. 474, 284 S.E.2d 916 (1981); and *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981).

In *Gilkerson v. Lilly, supra*, the Court recognized that the "mandatory joinder rule"

expressed in *State ex rel. Watson v. Ferguson, supra*, emerged after the Court had struggled in two earlier cases, *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979), and *State ex rel. Johnson v. Hamilton*, 164 W.Va. 682, 266 S.E.2d 125 (1980), to deal with the unfairness of subjecting a criminal defendant to the harassment and anxiety of having to undergo multiple trials for offenses arising out of the same transaction or sequence of events. In *Gilkerson*, the Court said:

Reading synoptically the trilogy of cases just discussed [*State ex rel. Watson v. Ferguson; State ex rel. Dowdy v. Robinson; State ex rel. Johnson v. Hamilton* ] it may be possible to draw certain conclusions about the continued viability of the same transaction test. First, the same transaction test is a procedural rule that is not mandated by either the State or federal constitutions but is in furtherance of the general policy enunciated in the double jeopardy clauses. Second, a person has a right to be tried at the same time for all felonies and misdemeanors arising out of the same transaction. Third, where there are multiple victims of a series of outrageous criminal acts arising out of the same transaction, as for example multiple murders or multiple rapes, the policy goal of vindicating the outrage of each individual victim is sufficiently urgent to warrant a court permitting separate trials to focus on the harm done to each separate victim. However, absent strong and urgent countervailing policy reasons for not requiring a joint trial going to the need to vindicate individual victims, a person cannot be tried at a second trial for an offense *of which the prosecution was aware at the time of the first trial* if the second offense arose out of the same transaction as the first offense.

*Gilkerson v. Lilly*, 169 W.Va. at 418, 288 S.E.2d at 168 (emphasis added).

■ As indicated in the language just quoted, the mandatory joinder rule does not apply unless the prosecution was "aware at the time of the first trial" that a second offense had arisen out of the same transaction as the first offense. This was, indeed,

stated in note 13 of *State ex rel. Watson v. Ferguson, supra:*

> There is an obvious qualification to this rule, in that offenses which are unknown to the prosecuting attorney or not committed within the same county are not subject to this joinder rule.

In the present case, the State does not challenge the fact that the "mandatory joinder rule," as set out in *State ex rel. Watson v. Ferguson, supra,* requires that a defendant ordinarily has the right to be tried for all felonies and misdemeanors arising out of the same transaction. Rather, it argues that the State had no knowledge of the offenses charged in the second indictment involved in the present case at the time the first indictment was returned and was thus not subject to the "mandatory joinder rule" because of the *State ex rel. Watson v. Ferguson* exception. In its brief, the State specifically says:

> The major assignment of error is Appellant's contention that the second prosecution was precluded by his earlier plea of guilty to the charge of sexual abuse, as all charges arose out of the same criminal episode. However, as will hereafter be shown, neither double jeopardy nor rules of joinder prohibited the second prosecution under the facts of this case. Due in large part to the tactical suppression of evidence by the Appellant and his accomplice, [T.L.], critical evidence underlying the second prosecution was unavailable at the time of the first indictment....

In discussing this further, the State says: [T]he Court also noted in *Watson* that: "[t]here is an obvious qualification to this rule, in that *offenses which are* **unknown to the prosecuting attorney** *or not committed within the same county are not subject* to this joinder rule." (Emphasis as supplied by State.) It is manifestly clear from the record that the prosecutor, herein, had no evidence of penetration when the first indictment was obtained against Appellant.

And further:

> W.Va.Code § 61–8B–3, Sexual Assault in the First Degree, requires proof of **penetration** of the female sex organ either by sexual intercourse or "sexual intrusion" and this element (penetration) is an addi-

tional fact not required for proof of the offense of first degree sexual abuse.

The State, in essence, argues that at the time of the return of the first indictment, it was unaware that sexual penetration had occurred and, consequently, was unaware that it had a possible case involving the charges in the second indictment. Specifically, the State's brief says:

> At the time of the return of Indictment 93–F–34, the victim had made no statements to ... (the investigating officer) ... (the Department of Health and Human Resources Child Protection Service worker) ... or the prosecuting attorney which suggested penetration ... [T]he codefendant, had also not indicated any sexual penetration had occurred. [Both witnesses later testified that their early statements minimized the level of sexual activity in order to protect defendant from getting into "trouble" ...] The guilty plea to Indictment No. 93–F–34 was predicated solely upon the victim's statement, and the Defendant's admissions, that fondling through clothes had occurred.

█ In addressing the State's arguments, the Court first notes that the State incorrectly claims that "penetration" or "sexual intrusion" are necessary elements of sexual assault in the first degree. While the statute establishing sexual assault in the first degree, W.Va.Code § 61–8B–3, indicates that a person is guilty when he "engages in ... sexual intrusion" under the circumstances specified, it also provides that he is guilty if he "engages in sexual intercourse." *See* note 2, *supra.* Sexual intercourse, for the purposes of this statute, is defined by W.Va. Code § 61–8B–1(7) as penetration or "contact between the sex organs of one person and the mouth or anus of another person." *See* note 2, *supra.* While penetration can establish "sexual intercourse," "sexual intercourse" can also be established, under the statute, if there is contact between the sex organs of one person and the mouth of the other. Penetration is not necessary if the forbidden mouth contact occurs.

The State also argues that before the return of the second indictment it had no

knowledge that the victim had been "filmed or photographed" as required by W.Va.Code § 61–8C–2. *See* note 2, *supra.*

The record shows that the first indictment against the defendant in the present case was returned on May 12, 1993. On May 11, 1993, the day before the return of the first indictment, a preliminary hearing was conducted in the case at 9:30 a.m., before a magistrate in Fayette County. An assistant prosecuting attorney was present at that hearing representing the State. The principal witness at the hearing was the victim, the defendant's son. His testimony, in this Court's view, reasonably informed the State that possible first-degree sexual assault and illegal filming of sexual conduct had occurred. The testimony of the defendant's son proceeded as follows:

Q: Okay. What—did she [the defendant's girlfriend, the codefendant]—did she touch any part of you?

A: Yes.

Q: Where did she touch you?

A: My front private.

Q: What—what do you—what's—what's the name for that—that front private?

A: A penis.

Q: What part of—what part of her did she touch your penis with?

A: Her mouth and her front private.

Q: When—when she touched you, was your dad in the room?

A: Yes.

Q: And what did he do when she did that?

A: Taking pictures.

In this Court's view, this testimony reasonably informed the State, before the return of the first indictment, that first-degree sexual assault and a filming offense had been committed.

The notice of first-degree sexual assault was the testimony that the victim's penis had been touched by the codefendant's mouth when the codefendant was over fourteen and the victim was under eleven. The "tip-off" to

the filming offense was the victim's testimony that the defendant was taking pictures.

■ Since the State reasonably knew of the first-degree sexual assault and the filming offense, the Court believes that under the "mandatory joinder rule" in *State ex rel. Watson v. Ferguson, supra,* the State should have joined those offenses in the first indictment. The failure to do so, as well as the later prosecution of the defendant after he had pled guilty to sexual abuse as charged in the first indictment, was improper, and, consequently, the Court concludes that, as a result of the violation of the mandatory joinder rule, the defendant's convictions for first-degree sexual assault and for use of a minor in filming sexually explicit conduct must be set aside.

Since the convictions must be set aside, the Court believes that it is unnecessary to discuss the procedural errors which the defendant claims were committed during his trial for those offenses. The Court also believes that it is unnecessary to discuss application of the recidivist statute to the sentences imposed on the convictions.

The Court notes that the defendant also claims that the trial court erred in refusing to allow him to withdraw his guilty plea to the charge of sexual abuse.

■ The hearing conducted by the circuit court before accepting the guilty plea was quite extensive, and the record shows that the defendant answered all the trial court's questions in a timely, intelligent, cogent, and reasonable manner. The trial court made substantial inquiry into the voluntariness of the plea, and during the questioning the defendant indicated that he had consumed alcohol some hours before the hearing. The court then engaged in substantial exploration of that issue. The court offered to allow the defendant to take a breathalyzer test to ensure his sobriety at the time of the plea. Both the defendant and his counsel assured the trial court that the defendant was, in fact, sober.[3] The trial court, in accepting the guilty plea, made findings of fact regarding the voluntariness and intelligence of the plea

---

**3.** The circuit court's questioning proceeded as follows:

THE COURT: Do you think you're drunk or intoxicated now?
THE DEFENDANT: No, sir.

and regarding the defendant's mental state. The court also found him sober and fully able to understand the consequences of the plea.

In syllabus point 3 of *State ex rel. Burton v. Whyte*, 163 W.Va. 276, 256 S.E.2d 424 (1979), this Court stated:

A guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside.

The facts adduced show that the defendant's guilty plea was voluntarily and intelligently entered into, and, for this reason, the Court believes that the defendant's assignment of error relating to the refusal of the trial court to allow the withdrawal of his guilty plea to the charge of first-degree sexual abuse is without merit.[4]

For the reasons stated, the convictions of the defendant for first-degree sexual assault and for use of minors in filming sexually explicit conduct are reversed, and the judgment of the circuit court sentencing the defendant to from-one-to-five years in the State penitentiary for sexual abuse is affirmed.

Reversed in part, affirmed in part.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, J., sitting by temporary assignment.

---

THE COURT: Mr. Keenan [representing the defendant], do you think he's drunk or intoxicated now?
MR. KEENAN: No, Your Honor.
THE COURT: Because if there's any doubt, we'll .send him over and have them run a breathalyzer on him. And they're prepared to do that now, so we wouldn't have to wait. You don't think there's any doubt that he's sober and knows what's going on?
MR. KEENAN: He appears in all respect to me, Your Honor, to be cogent.
THE COURT: Sober?
MR. KEENAN: Sober.
Later during the hearing, the defendant intelligently answered questions about what was happening during the proceeding and about such things as where he had attended college.

4. The Court notes that, in conjunction with moving to withdraw his guilty plea, the defendant claimed that the State had improperly filed a recidivist information against him. This recidivist information was a separate information from the information filed after the jury convicted the defendant on the assault and filming charges. A review of the record shows that the State withdrew this first recidivist information and that no enhanced sentence was ever imposed on the sexual abuse conviction growing out of the defendant's guilty plea.

The Court cannot see how the fact that the State filed, and then withdrew, a recidivist information in conjunction with the guilty plea should serve as a basis for setting aside that plea.