STATE OF WEST VIRGINIA

*v.*

HOBART D. ASH

(No. 10610)

Submitted January 20, 1954. Decided March 2, 1954.

*M. E. Boiarsky, John G. Hackney, Dennis R. Knapp,* for plaintiff in error.

*John G. Fox,* Attorney General, *Virginia Mae Brown,* Assistant Attorney General, for defendant in error.

GIVEN, PRESIDENT:

The grand jury of the Intermediate Court of Kanawha County for the September term, 1952, returned an indictment against Hobart D. Ash charging that he "did unlawfully and willfully fail, neglect and refuse to prepare and return certificates of the result of said election in Precinct No. 31 of said County of Kanawha, in the manner provided by law, within twelve hours after the completion of the count, tabulation and declaration of the result of said primary election in said Precinct No. 31, against the peace and dignity of the State". A verdict of "guilty as charged in the within indictment" was returned by a jury on October 10, 1952, and defendant was sentenced to serve twelve months in the jail of Kanawha County. The Circuit Court of Kanawha County, on January 22, 1953, refused to grant a writ of error and supersedeas to the final judgment of the Intermediate Court of Kanawha County. To the last mentioned judgment this Court granted a writ of error and supersedeas.

At the primary election held in Kanawha County on May 13, 1952, defendant was one of the duly appointed and qualified counting commissioners at Precinct No. 31. Due to difficulties in obtaining a sufficient number of precinct election officials to qualify, the polls at Precinct No. 31 were not opened until about nine or nine-thirty o'clock on the morning of that day. Several of the officials who did qualify were not experienced and the voting at

the precinct apparently was heavy. In consequence the work of the precinct officials in ascertaining and tabulating the results of the election was not completed until approximately seven o'clock of the morning following the election and, at that time, apparently only part of the certificates of the results of the election had been made out. At that point in the progression of the work the precinct election officials appear to have concluded that the task of finishing the certificates should not be completed at the polling place, and the ballots, poll books, tally sheets and other official precinct papers and supplies were sealed in containers furnished for that purpose, in preparation for return to the county seat. These containers were, by several of the precinct election officials, including defendant, removed to the residence of a Mr. Bess, father of one of the precinct election officials, whose residence was situated a short distance from the polling place. The containers were placed on the porch of the residence to await the arrival of an automobile in which they could be removed to the county seat. Defendant then went to the home of his father and obtained an automobile for that purpose, returned to the Bess residence, placed the returns and supplies in the automobile, and started toward Charleston. Apparently, in addition to the defendant, there were in the car Mike Gagich, one of the precinct election officials, Melvin K. Bess, another of the precinct election officials, and the father of defendant. On the way toward Charleston they stopped at the residence of a Mr. Seabolt, where some of them, at least, obtained drinks of whiskey. They also stopped at the state liquor store at Cedar Grove, where they purchased whiskey. Later, as was testified, because they were too sleepy to drive they parked the automobile fifty or sixty yards off the main highway and went to sleep. They awakened early in the afternoon and thereafter delivered the ballots and other papers and supplies to the proper office. It appears certain that no certificates of results were within the packages or supplies delivered, and it is not certain that any of the partially completed certificates of results were ever placed in the containers. On the trial it was shown that certain

changes had been made in the election returns, as reflected by the original figures and markings of the precinct election officials. The evidence does not show, however, whether such changes were actually made by defendant or, in fact, whether made before or after the papers and supplies were sealed in the containers furnished for that purpose.

Numerous questions are raised by the assignments of error made by defendant. The conclusion we reach as to the question relating to the sufficiency of the indictment makes it unnecessary to consider the other questions, since they can not arise on any future trial.

One of the grounds of the demurrer of defendant to the indictment was "That same is insufficient in law in that it fails to allege facts charging an offense under the law and thus fails to fully and plainly inform the defendant of the charge he is required to meet". The assignment of error relating to the same point is "The indictment against the defendant is insufficient under, and in violation of, the Constitution of West Virginia, Article III, Section 14". Defendant's motion to quash the indictment, based upon the same ground, was overruled, and his motion in arrest of judgment was denied.

The position of the State is that the indictment charges the offense substantially in the language of the statute and therefore is sufficient under the general rule to the effect that "An indictment is generally sufficient if it follows the language of the statute creating the offense charged, and it ordinarily need not allege the mode or manner of the commission of the offense." Point 2, Syllabus, *State v. Johnson*, 134 W. Va. 357, 59 S. E. 2d 485. Defendant's position is that the statute does not define the particular wrongful act or acts constituting the offense and that in such circumstances the indictment must amplify or expand the language of the statute so as to inform the defendant as to the particular offense of which he is charged.

Code, 3-7-14, under which the indictment was drawn, reads: "Any election officer who shall willfully fail, neg-

lect or refuse to prepare and return certificates of the result of election in the manner provided, within twelve hours after the completion of the count, tabulation and declaration of the result; or who shall divulge the result of the count of the ballots at any time prior to the closing of the polls, shall be guilty of a misdemeanor, and, upon conviction, fined not more than one thousand dollars, or be confined in the county jail for not more than one year, or both, in the discretion of the court." A comparison of the applicable language of this section with the language of the indictment quoted in the first paragraph of this opinion reveals that the language of the indictment does substantially follow that contained in the statute. But does the statute even attempt to define the particular act or acts which constitute any offense? Is it not significant that this statute requires a search for the "manner provided" for the preparation and return of certificates of results?

In making such search, in determining the "manner provided", we first turn to Code, 3-4-18, as amended, dealing with ascertainment of results of primary elections. We find here that after the polls have been closed the election officials are required to "proceed to ascertain the result of the election"; the "manner provided" for doing so is defined step by step and failure to do any of the things required in the "manner provided" is made an offense. After the result has been ascertained the election officials are required to "make out and sign four certificates, for each party represented", and the form of the certificates provided by the statute requires a statement as to the vote for each candidate. Disposition of the several certificates is provided for in detail. Failure to do any of the things required in connection with the certificates also constitutes separate offenses. Thus we discover scores of possible offenses created by this section. But we need look farther to discover the full extent of the possible offenses "provided by law" for failure or neglect to properly prepare and return such certificates, for this same section provides that "In all precincts in which a

receiving board and a counting board of election officers are appointed, the work of counting the votes and of ascertaining and certifying the result shall be divided between the two boards, and be performed by them, respectively, in the same manner provided in article five of this chapter for counting the votes and ascertaining and certifying the result of a general election."

Obviously, in such a situation, an indictment merely charging the failure to prepare and return certificates of results does not inform the defendant of the particular offense for which he is to be tried. Section 14 of Article III of the State Constitution requires that a defendant "shall be fully and plainly informed of the character and cause of the accusation * * *". Even if we look alone to the language of Code, 3-7-14, we find that an election official may be subject to numerous charges, any one of which would constitute a distinct offense. In such circumstances, under such an indictment, how could a defendant prepare his defense, and, if convicted thereunder, how could he determine of what offense he was convicted, especially if, as was done here, the State be permitted to attempt to prove numerous violations? See *State* v. *Gargiliana,* 138 W. Va. 376, 76 S. E. 2d 265. The State concedes that to be sufficient an indictment must fully and plainly inform the defendant of the character and nature of the offense attempted to be charged, so that the defendant may properly prepare his defense, and be so definite and explicit as to enable him to plead former jeopardy.

In *State* v. *Lynch,* 84 W. Va. 437, 100 S. E. 284, this Court held: "1. If a statute creating an offense does not by its terms define the particular wrongful act, in such manner and to such extent as to disclose all of its essential elements, an indictment in the language of the statute is not sufficient. It should expand the words of the statute by such specification of the essentials of the offense as will define it with particularity." See *State* v. *Zitzelsberger,* 129 W. Va. 229, 39 S. E. 2d 835; *State* v. *Garner,* 128 W. Va. 726, 38 S. E. 2d 337; *State* v. *Simmons,* 99 W. Va. 702, 129 S. E. 757; *State* v. *Lantz,* 90 W. Va. 738, 111 S. E.

766, 26 A. L. R. 894; *State* v. *Mitchell,* 47 W. Va. 789, 35 S. E. 845; 42 C. J. S., Indictments and Informations, Section 139.

The judgment of the Circuit Court of Kanawha County and the judgment of the Intermediate Court of Kanawha County complained of are reversed, the verdict of the jury set aside, and the case remanded to the Intermediate Court of Kanawha County with directions to quash the indictment returned against defendant.

*Judgments reversed;*
*verdict set aside;*
*remanded.*