STATE OF WEST VIRGINIA

*v.*

JIMMY RECTOR

(No. 14618)

Decided July 17, 1981.

*Jesser & Harrington* and *Travers R. Harrington, Jr.,* for Rector.

750

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for the State.

McHugh, Justice:

This action is before this Court upon the petition of Jimmy Rector for an appeal from orders of the Circuit Court of Fayette County, West Virginia, entered upon jury verdicts in 1979, adjudging him guilty of possession and delivery of marihuana and, further, being subject to enhanced sentencing pursuant to the West Virginia habitual offender statutes, *W. Va. Code,* 61-11-18, *et seq.* Consequently, this Court has before it the petition, all matters of record, including the exhibits and transcripts of the Rector (hereinafter "defendant") marihuana and recidivist trials, and the briefs filed by counsel.

On September 12, 1978, a Fayette County grand jury returned an indictment, No. 78-F-138, charging that the defendant and Randy Feazell in July, 1978, "... did knowingly intentionally, unlawfully and feloniously possess and possess with the intent to deliver and deliver to one Marvin Griffith a controlled substance, to wit, marihuana.[1] ..." Indictment No. 78-F-138, charging the defendant with a marihuana violation, was one of several indictments returned against the defendant in 1978 by the Fayette County grand jury.

The defendant was tried separately from Randy Feazell. The trial began on April 9, 1979, and on April 12, 1979, the jury found the defendant guilty of ... "possession and delivery of marihuana, a controlled substance." Accordingly, by order entered April 18, 1979, the defendant was adjudged guilty by the Circuit Court upon the jury verdict.

On April 18, 1979, the State filed in the Circuit Court of Fayette County, West Virginia, an information alleging essentially that the defendant had been convicted of a felony prior to his April, 1979, conviction of possession and

---

[1] Marihuana is a controlled substance pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code,* 60A-1-101, *et seq.* Specifically, the defendant was charged with violating the provisions of *W. Va. Code,* 60A-4-401.

delivery of marihuana. This information was filed pursuant to the West Virginia habitual offender statutes, *W. Va. Code* 61-11-18, *et seq.* A jury trial was held on May 28, 1979, wherein the jury found that the defendant, Jimmy Rector, was the same person who was convicted in 1974 in the United States District Court for the Northern District of Georgia of the interstate transportation of a stolen motor vehicle and, further, was the same person who was convicted in April, 1979, in the Circuit Court of Fayette County, West Virginia, of possession and delivery of marihuana. By order entered June 1, 1979, the Circuit Court of Fayette County adopted the jury's findings.

Consequently, the defendant was sentenced to the West Virginia Penitentiary for an indeterminate term of not less than one nor more than ten years. The Court stated that this sentence was based upon a one to five year sentence for the defendant's conviction of possession and delivery of marihuana, plus an additional five year sentence pursuant to the West Virginia habitual offender statutes.

In his petition for appeal to this Court, the defendant asserts that several errors were committed by the Circuit Court of Fayette County with respect to his trial upon the marihuana charge and his recidivist trial. These errors include *inter alia* issues concerning (1) chain of custody, (2) the admission of drug paraphernalia, (3) the question of constructive possession and delivery of marihuana, (4) introduction of evidence of multiple offenses at trial and (5) the appropriateness of the recidivist trial.

### *Factual Background*

During the summer of 1978, the period in question, the defendant lived in Oak Hill, Fayette County, West Virginia. Randy Feazell, during part of this time, lived with the defendant while the defendant was separated from his wife. The record indicates that prior to June, 1978, Randy Feazell and Marvin E. Griffith were involved in the sale of marihuana

On August 2, 1978, Marvin Griffith sold a quantity of marihuana to a police officer. At that time, Griffith was arrested, and a search pursuant to warrant was conducted

of the Griffith home. As a result of this search, police officers seized marihuana and drug paraphernalia.

At the trial of the defendant beginning April 9, 1979, Marvin Griffith, the State's principal witness, identified the defendant as the person Griffith dealt with in obtaining much of the marihuana confiscated from the Griffith home on August 2, 1978.

The testimony of Griffith at the trial of the defendant is somewhat confusing and contradictory. Essentially, Griffith testified that in June and July, 1978, he received marihuana from third parties acting on behalf of the defendant. Griffith further testified that he paid the defendant directly for this marihuana.

The defendant asserted the defense of alibi, testifying that during part of July, 1978, he was in Kansas and Tennessee.

Specifically, Griffith testified on direct examination that in June, 1978, he gave Randy Feazell approximately $1,000 for some marihuana and, further, that he saw Feazell hand the money to the defendant. A few days later, Griffith, at the defendant's direction, received marihuana from a third party.

Griffith testified that at the end of June he paid the defendant $1500 for marihuana. This $1500 payment and a $500 payment made subsequently, were made directly from Griffith to the defendant.

Griffith testified that in July at the defendant's direction he received marihuana from a third party at the Fiesta Club. Griffith further testified that at the defendant's direction he received marihuana from a third party in a motor vehicle parked at the defendant's home. Finally, Griffith testified that in July, 1978, he paid the defendant $2000 for marihuana and that this payment was made by Griffith directly to the defendant.

At the defendant's trial beginning April 9, 1979, forty-six exhibits were marked for identification by the State. Almost all of these exhibits were admitted into evidence and they fall into two categories. The first category of

exhibits was drug paraphernalia owned by Griffith and marihuana grown by Griffith. The trial judge instructed the jury that these exhibits were admitted only upon the question of whether Griffith was a dealer in marihuana. The second category of exhibits was marihuana and bags to contain marihuana. This category was admitted upon the question of the guilt or innocence of the defendant.[2]

At the conclusion of the trial, the jury found the defendant guilty of possession and delivery of marihuana.

# I
## CHAIN OF CUSTODY

On August 2, 1978, police officers, pursuant to a search warrant, conducted a search of the home of Marvin E. Griffith in Fayette County, West Virginia. At that time, marihuana and drug paraphernalia were seized. Deputy Lawrence Boley of the Fayette County Sheriff's Office took possession of the seized items.

After the seizure, Deputy Boley took the seized items to Fayetteville where a field test was performed upon the marihuana. This test indicated that the substance was in fact marihuana. Boley then placed the items in a safe in the Fayette County Sheriff's Office. At the trial of the defendant, Deputy Boley testified that from the time the items were seized to the time certain items were taken to the Criminal Investigation Bureau (C.I.B.) laboratory in Charleston, West Virginia, the items were in Boley's custody, care and control.

On August 3, 1978, Deputy Boley took the seized marihuana to the C.I.B. laboratory in Charleston where it was locked in an evidence locker until it could be analyzed

---

[2] The first category of State's exhibits admitted upon the question of whether Griffith was a dealer in marihuana includes Exhibit No. 1, a large cooler container; Exhibit No. 2, scales; Exhibit No. 3, bags; Exhibit No. 4, a pipe; Exhibit No. 5, a pipe stem; Exhibit No. 7, cigarette paper; Exhibit No. 10, a pipe; Exhibit No. 12, a bottle of alcohol; Exhibit Nos. 14 and 18, marihuana; Exhibit No. 14A, a bag.

The second category of State's exhibits admitted upon the question of the guilt or innocence of the defendant includes Exhibit Nos. 16, 17, 19, 20 through 38 and 39A through 39F, marihuana, and Exhibit No. 40, a shipping box.

by a police chemist. The record does not indicate that the drug paraphernalia was also taken to Charleston.

On August 4, 1978, West Virginia State Police Lieutenant Raymond Barber, a chemist at the C.I.B. laboratory, removed the marihuana from the evidence locker and upon testing, determined the substance to be marihuana.

After testing, Lieutenant Barber packaged the marihuana in a box and mailed it to Boley by certified mail. The record is inconclusive as to the exact dates this box was mailed from Charleston and received in Fayetteville. Deputy Boley testified that the box was mailed on November 14, 1978, and received on November 29, 1978. However, Lieutenant Barber testified that the box was mailed November 13, 1978, and delivered November 14, 1978.

After the box of marihuana was mailed from Charleston, it was received in Fayetteville by Barbara McGuffin, Chief Office Deputy, Fayette County Sheriff's Office. Deputy McGuffin routinely took mail from the post office to the Fayette County Sheriff's Office where she would distribute the mail to the appropriate department.

Deputy Boley testified that after the box had been mailed from Charleston, he removed it from a filing cabinet in the Fayette County Jail and placed the box in the safe in the Sheriff's Office where it remained until time of trial.

It should be noted that the box mailed by Lieutenant Barber from the C.I.B. laboratory to Fayette County was not opened prior to the trial of the defendant beginning on April 9, 1979.

The defendant asserts that the State did not establish a proper chain of custody with respect to the marihuana admitted into evidence at trial. The defendant emphasizes the fact that Deputy Boley found the box of marihuana on a cabinet in the Fayette County Jail after it had been mailed from Charleston. We are of the opinion, however, that *State v. Davis*, 266 S.E.2d 909 (W. Va. 1980), is dispositive of the chain of custody issue. In *Davis*, this Court affirmed the appellant's conviction of delivery of a controlled substance, marihuana.

The chain of custody involved in *Davis* was similar to the chain of custody involved in this case. In *Davis*, Bert Foutty, an informant and Deputy of the Wood County Sheriff's Office, received on October 17, 1975, a paper bag of marihuana pursuant to an exchange of money. Foutty immediately took the marihuana to the residence of Deputy Chapman. Chapman tagged the marihuana and placed it in the evidence locker at the Wood County Correctional Center. On December 31, 1975, Chapman sent the marihuana to the Criminal Investigation Bureau. The marihuana arrived at the C.I.B. laboratory on January 7, 1976, where it was tested and again tagged by State Police Lieutenant Barber. Lieutenant Barber confirmed that the substance was in fact marihuana and then mailed the marihuana by certified mail back to Wood County. On April 28, 1976, the package of marihuana was picked up by Foutty who returned it to the evidence locker in Wood County. At the appellant's trial, witnesses Foutty, Chapman and Barber identified the marihuana by means of the evidence tags. Furthermore, Foutty testified that the bags that had contained the marihuana within the paper bag were in the same condition as when he received the marihuana on October 17, 1975.

In *Davis*, this Court held that even though the chain of custody established by the State was not perfect, it was sufficient to justify the admission of the marihuana into evidence. As this Court stated in Syl. pt. 1:

> Before a physical object connected with a crime may properly be admitted into evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. Factors to be considered in making this determination are: (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it.

This Court recognized in *Davis* that marihuana, a fungible exhibit, is not as readily identifiable in court as a gun or a photograph. This fact must be considered by the trial court in determining whether a sufficient chain of

custody has been established by the State. However, this Court went on to note the facts in *Davis* clearly established a proper chain of custody at least through the point where the marihuana was subjected to chemical analysis. Accordingly, this Court recognized that in a drug-related case, ". . . where guilt is primarily dependent upon proof that the substance involved is in fact what it is alleged to be, the chain of custody will ordinarily be sufficient if it traces the path of the exhibit through analysis." 266 S.E.2d at 913.

Finally, this Court stated in *Davis* that the mere possibility or speculation that the marihuana could have been tampered with does not constitute sufficient ground for exclusion at trial.[3]

The chain of custody established by the State in the case now before this Court is stronger in two regards than the chain of custody established in *Davis*. First, the facts in *Davis* indicate that the marihuana was mailed to the Criminal Investigation Bureau for chemical analysis. In this case, Deputy Boley took the marihuana in person to the Criminal Investigation Bureau where he locked the

---

[3] As this Court stated in *Davis*:

"To allow introduction of physical evidence into a criminal trial, it is not necessary that every moment from the time evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could conceivably come in contact with the evidence during that period, nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with." *Munnerlyn v. State*, 576 S.W.2d 714 (Ark. 1979).

. . . .

"While it is true that the preferred course is to establish a complete chain of evidence through the point at which the article is brought into the courtroom, such perfection is not an absolute requirement. Though there was no specific showing that the evidence was secure from meddling during the six month period between analysis and trial, this is not in itself a fatal flaw. The mere possibility or speculation that evidence could have been tampered with does not constitute sufficient ground for exclusion." *Le Beau v. State*, 589 P.2d 1292 (Wyo. 1979). 266 S.E.2d at 911-912, 913.

marihuana in the evidence locker until it could be tested. Second, in *Davis* the location of the marihuana from the time it was received by Foutty, after testing by Lieutenant Barber, to the time it was exhibited at trial was uncertain. There is a similar uncertainty in this case insofar as Deputy Boley found the box of marihuana on a filing cabinet in the jail before he placed it in the safe. However, in this case we know that Deputy Boley in fact placed the marihuana in a safe after it had been mailed from Lieutenant Barber. More important, this record is clear that the box was not opened from the time it was mailed by Lieutenant Barber until the defendant's trial beginning April 9, 1979.

Furthermore, as in *Davis*, Lieutenant Barber tagged the exhibits when he tested them at the Criminal Investigation Bureau and recognized these exhibits at trial.

We are of the opinion, therefore, that the chain of custody as to the marihuana was sufficiently established by the State to justify its admission at trial. As in *Davis*, the chain of custody in this case was clearly established through the point of chemical analysis, and, further, it is mere speculation that the marihuana was tampered with between the time of chemical analysis and the defendant's trial.

Finally, with regard to the drug paraphernalia not taken to the Criminal Investigation Bureau, there is testimony in the record indentifying the paraphernalia produced by the State at trial as being the same items seized at the Griffith home on August 2, 1978.

In conclusion, this Court cannot say that the Circuit Court of Fayette County abused its discretion with respect to the chain of custody and indentification of the State's exhibits produced at the defendant's trial. As we concluded in *Davis*, the State's exhibits at trial were in substantially the same condition as when they were seized from the Griffith home.

## II

## THE ADMISSION OF DRUG PARAPHERNALIA AND HOMEGROWN MARIHUANA

As indicated above, drug paraphernalia owned by Marvin Griffith and marihuana grown by Griffith were admitted into evidence at the defendant's trial. These items were marked as State's exhibits in the presence of the jury on April 9, 1979, and were admitted into evidence on April 10, 1979. Marvin Griffith was the State's principal witness against the defendant, and the trial judge instructed the jury that the drug paraphernalia and homegrown marihuana were admitted only upon the question of whether Griffith was a dealer in marihuana.

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 5 *Casto v. Martin*, 230 S.E.2d 722 (W. Va. 1976) citing syl. pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955).

However, upon a careful review of the record in this case, this Court agrees with the assertion of the defendant that the admission by the Fayette County Circuit Court of the drug paraphernalia and homegrown marihuana was prejudicial error and constituted an abuse of discretion.

In *State v. Hiott*, 276 S.E.2d 163 (S.C. 1981), the defendants were convicted of murder, attempted armed robbery and conspiracy. During the trial, the trial judge allowed the State to introduce various drugs into evidence to show a conspiracy to rob a pharmacy. However, the trial judge excluded all drug-related paraphernalia upon the basis that its prejudicial effect outweighed its probative value. 276 S.E.2d at 166. In reviewing the actions of the trial judge, the Supreme Court of South Carolina held that no error was committed.

This balancing test of weighing the prejudicial effect of evidence against its probative value has been applied by this Court in various recent cases. *State v. Young*, 273 S.E.2d 592, 604 (W. Va. 1980); *State v. Green*, 260 S.E.2d 257,

264 (W. Va. 1979) and *State v. Sette*, 242 S.E.2d 464, 471 (W. Va. 1978).

In this case, the prejudicial effect against the defendant caused by the display of the drug paraphernalia and marihuana of Griffith clearly outweighed the probative value of such exhibits. These items had no bearing upon the guilt or innocence or the defendant.

Specifically, forty-five of the State's forty-six exhibits were marked for identification before the jury during the testimony of Deputy Boley, the State's first witness called on April 9, 1979. At that time, no attempt was made to clearly distinguish those exhibits associated with Griffith from those associated with the defendant. It was not until the afternoon of April 10, 1979, after a considerable amount of testimony had been received by the jury, that the Court specifically instructed the jury that the drug paraphernalia and homegrown marihuana was to be associated only with Marvin Griffith. We hold, however, that the admission of these items was unduly prejudicial to the defendant.

It is reversible error for a trial judge to admit into evidence in a criminal trial of a defendant charged with a marihuana violation drug paraphernalia and marihuana belonging to a state witness when such drug paraphernalia and marihuana have not been associated with the defendant and have no probative value relating to the guilt of the defendant.

### III
### CONSTRUCTIVE POSSESSION AND CONSTRUCTIVE DELIVERY OF MARIHUANA

Pursuant to *W. Va. Code*, 60A-4-401(a), delivery of a controlled substance is unlawful.[4] Pursuant to W. Va. *Code*, 60A-4-401(c), possession of a controlled substance is

---

[4] *W. Va. Code*, 60A-4-401(a) provides, in part, as follows: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

unlawful.[5] Specifically, it is unlawful pursuant to W. Va. Code, 60A-4-401(a), to manufacture, deliver or possess with intent to manufacture or deliver a controlled substance, and this section provides various felony and misdemeanor penalties depending upon the controlled substance involved. On the other hand, unlawful possession of a controlled substance is a misdemeanor pursuant to *W. Va. Code*, 60A-4-401(c). Furthermore, constructive possession of marihuana and constructive delivery of marihuana are concepts recognized in West Virginia law. Constructive possession of marihuana was recognized by this Court in *State v. Dudick*, 213 S.E.2d 458 (W. Va. 1975). Constructive delivery is recognized by statute. *W. Va. Code*, 60A-1-101(f).[6]

In *Dudick, supra*, this Court reversed the defendant's conviction in the Circuit Court of Monongalia County, West Virginia, of possession of a controlled substance. The indictment and conviction of the defendant in circuit court were the result of marihuana being found by police officers during a search of an apartment in Morgantown, West Virginia, in 1973. The defendant and another person were in the apartment when the marihuana was seized. The defendant was not a resident of the apartment.

---

[5] *W. Va. Code*, 60A-4-401(c) provides as follows:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwie authorized by this chapter. Any person who violates this subsection is guilty of a misdemeanor, and disposition may be made under section 407, subject to the limitations specified in said section 407, or upon conviction such person may be confined in the county jail not less than ninety days or more than six months, or fined not more than one thousand dollars, or both: Provided, that notwithstanding any other provision of this chapter to the contrary, any first offense for possession of less than 15 grams of marihuana shall be disposed of under said section 407."

[6] *W. Va. Code*, 60A-1-101(f) provides as follows: " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

This Court in *Dudick* rejected the theory that mere presence upon premises in which a controlled substance is found raises a presumption against the defendant of unlawful possession. Rather, this Court stated that the following instruction, given to the jury in *Dudick*, is a correct statement of the law:[7]

> The Court instructs the jury that possession of marijuana is the conscious and intentional physical possession giving the Defendant immediate and exclusive control over marijuana. The offense of possession of marijuana also includes constructive possession if the State can establish beyond a reasonable doubt that the Defendant had knowledge of the marijuana and that it was subject to his dominion and control.

> Under the facts of this case, the State has not shown that Metro Dudich [sic] had actual physical possession of any marijuana when he was arrested. Therefore, before there can be a conviction in this case, the State must prove beyond a resonable doubt that Metro Dudich [sic] knew that there was marijuana where the police officers found it and that Metro Dudich [sic] exercised dominion and control over it.

> 213 S.E.2d at 467.

In view of the above, the defendant asserts that the Fayette County Circuit Court committed error in reading to the jury State's amended instruction no. 2. This instruction stated as follows:

> The court instructs the jury that possession and delivery as stated in the indictment in this matter specifically includes constructive possession and transfers of a controlled substance. The court further instructs the jury that a constructive possession and transfer is the transfer of a controlled substance either belonging to an indi-

---

[7] "The offense of possession of a controlled substance also includes constructive possession, but the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was subject to defendant's dominion and control." Syl. pt. 4, *State v. Dudick*, 213 S.E.2d 458 (W. Va. 1975).

vidual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive possession and transfer.

Therefore, if the jury believe from the evidence in this case beyond a reasonable doubt that there was the possession and transfer of marihuana to Marvin Griffith in July 1978, by some person at the direction of the defendant and if the jury believe that such marihuana belonged to Jimmy Rector or was under his control and direction, then the jury should find the defendant, Jimmy Rector, guilty of possession and delivery of a controlled substance, to-wit, marihuana.

It should be noted that neither the language of this instruction nor the indictment, both of which permitted the jury to find the defendant guilty of "possession and delivery"of marihuana, follow the provisions of *W. Va. Code,* 60A-4-401. Throughout the trial the language of *W. Va. Code,* 60A-4-401, was not followed. *See* Syl. pt. 2, *State v. Beck,* No. 14549 (W. Va. Sup. Ct. July 17, 1981). For example, State's amended instruction no. 1, combining "possession and delivery" as a single, felony offense does not follow the language of *W. Va. Code,* 60A-4-401. As indicted above, possession and delivery are treated separately in *W. Va. Code,* 60A-4-401, and had that section been followed in the trial, some of the problems now before this Court could have been avoided.

Therefore, this Court is of the opinion that the trial court committed error in the giving of State's amended instruction no. 2. Specifically, the possession and delivery (transfer) of a controlled substance are separate offenses, possession being an offense pursuant to *W. Va. Code,* 60A-4-401(c) and delivery or possession with the intent to deliver being an offense pursuant to *W. Va. Code,* 60A-4-401(a).[8] Accordingly, constructive possession and

---

[8] This Court recognizes that delivery of a controlled substance implies some degree of possession. However, possession of a controlled substance, *W. Va. Code,* 60A-4-401(c), and delivery of a controlled substance of possession with the intent to deliver, *W. Va. Code,*

constructive delivery of a controlled substance arise from separate offenses and should have been defined separately in the instructions to the jury. The giving of this instruction was error. It is reversible error for a trial judge to instruct a jury in a criminal trial of a defendant charged with a marihuana violation that the defendant may be found guilty of "possession and delivery of a controlled substance" when such instruction considers "possession and delivery of a controlled substance" as a single offense. Citing Syl. pt. 3, *State v. Bolling*, 246 S.E.2d 631 (W. Va. 1978), this Court stated in Syl. pt. 3 *State v. McCormick* 277 S.E.2d 629 (W. Va. 1981): "[I]nstructions in a criminal case which are confusing, misleading, or incorrectly state the law should not be given."

## IV
### *THE ISSUE OF MULTIPLE OFFENSES*

The indictment alleged that the defendant committed a criminal act or acts in July, 1978. However, the State introduced evidence to the effect that the defendant committed criminal acts in June and July, 1978. These acts are related in that they involve both possession or delivery of marihuana. Nevertheless, this Court is of the opinion that the trial judge committed error in the unrestricted admission of evidence to the effect that the defendant committed various criminal acts in June and July, 1978.

An indictment is sufficient when it clearly states the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense. Syl. pt. 1, *State v. Furner*, 245 S.E.2d 618 (W. Va. 1978); *State v. Ash*, 139 W. Va. 374, 379, 80 S.E.2d 339, 342 (1954).

There is nothing in the record to indicate that evidence of various criminal acts of the defendant in June and July, 1978, was admitted for the limited purpose of showing that the defendant, having committed similar collateral crimes, was likely to be guilty of possession or delivery of

60A-4-401(a), have been treated separately by the West Virginia Legislature.

marijuana in July, 1978, as charged in the indictment. In other words, the State did not attempt to establish a "common scheme or plan" within the meaning of *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). No instruction concerning such theory was offered by the State.

Subject to certain exceptions discussed below, collateral or other crimes for which a defendant is not charged are inadmissible. As we held in Syl. pt. 1, *State v. Moubray*, 139 W. Va. 535, 81 S.E.2d 117 (1954): "The general rule is that the State, in a criminal case, may not introduce evidence of a substantive offense committed by the defendant which is separate and distinct from the specific offense charged in the indictment."

In *Thomas*, we held in Syl. pt. 12 as follows:

> The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial.

The phrase "common scheme or plan" has been defined to some extent by this Court. As indicated above in *Thomas*, and in subsequent decisions of this Court, "common scheme or plan" has been generally defined as ". . . embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others. . . ." *Thomas, supra*, at 655. *See also*, Syl. pt. 9, *State v. Craft*, 272 S.E.2d 46 (W. Va. 1980); *State v. Harman*, 270 S.E.2d 146, 155 (W. Va. 1980); *State v. Haverty*, 267 S.E.2d 727, 733 (W. Va. 1980); *State v. Spicer*, 245 S.E.2d 922, 925 (W. Va. 1978).

"Common scheme or plan" is the fourth enumerated exception in *Thomas* to the general rule that evidence of collateral crimes is inadmissible. "Common scheme or plan" was specifically defined in *State v. Frasher*, 265 S.E.2d 43, 50 (W. Va. 1980) where we stated as follows:

"To a cerain extent, the fourth exception in *Thomas* combines two separate concepts. First, it embraces a situation where the defendant embarks on a plan to commit a series of similar crime which are interrelated.

The second concept is where, in the proof of a particular crime, the evidence may also tend to establish a related crime with which the defendant has not been charged."[9]

Whether the prosecution seeks to introduce collateral crimes to show "common scheme or plan," "motive," "intent" or otherwise, the admission of such evidence rests within the discretion of the trial court. As we held in Syl. pt. 14 in *Thomas*: "As the control of the scope, latitude and method of introduction of evidence of collateral crimes and charges is vested in the trial court, motions to introduce and motions and objections for exclusion of such evidence are addressed to the sound discretion of the court."[10]

---

[9] The common scheme or plan exception to the general inadmissibility of collateral offenses at trial is discussed in 2 Wigmore, *Evidence* § 304 (Chadbourn rev. 1979), where the following is stated:

But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent. The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a preexisting design, system, plan, or scheme, directed forwards to the doing of that act. In the former case (of intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as a part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.

The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.

[10] In *Thomas*, we noted some of the consequences of the admission at trial of evidence of collateral crimes:

Certainly, the indiscriminate receipt of such evidence in volume and scope can predispose the minds of the jurors to believe the

No theory of "common scheme or plan" or other exception under *Thomas* or subsequent cases was advanced by the State against the defendant in the proceedings below. Specifically, the State did not argue that proof of the various marihuana transactions alleged tended to establish the guilt of the defendant under the indictment.

The indictment in this case is a single court indictment charging that the defendant in July, 1978, did "posses and posses with the intent to deliver and deliver to one Marvin Griffith a controlled substance, to-wit, marihuana." The evidence of the State admitted at trial, however, tended to establish the defendant's involvement in several marihuana transactions in June and July, 1978. The indictment does not contain separate counts for each offense alleged.

In Syl. pt. 1, *State ex rel. Watson v. Ferguson*, 274 S.E.2d 440 (W. Va. 1980), we held as follows:

> A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In *State ex rel. Watson*, the defendant was charged by a Wayne County grand jury with the murder of four persons on June 25, 1979. The defendant was convicted of first

accused guilty of the specific crime by showing him guilty or charged with other crimes. Moreover, the admissibility of the collateral crimes raises collateral issues which compel the defendant to meet charges of which the indictment gives him no information; which confuse his strategy of defense; and which raise such a variety of issues that the jury's attention is diverted from the charge immediately before it. This result, obviously prejudicial, is to be avoided by prompt objection on the part of the defense and close attention and control by the trial court to insure that an accused receives a fair trial when he is being subjected to zealous prosecution.
157 W. Va. at 656. *See also*, Cleckley, *Handbook on Evidence for West Virginia Lawyers*, §§ 29 and 33 (The Michie company 1978).

degree murder upon one of the charges. The defendant then sought upon double jeopardy grounds to prohibit further trials upon the remaining murder charges. However, this Court, holding that the defendant could be tried and punished separately upon the charges, declined to prohibit further prosecution.

At the defendant's trial, the State introduced evidence to the effect that the defendant committed criminal acts in June and July, 1978. These acts allegedly involved the possession or delivery of marihuana and therefore were "of the same or similar character" within the meaning of Syl. pt. 1, *State ex rel. Watson.* As indicated above, *State ex rel. Watson* holds that a defendant shall be charged separately for each alleged crime "of the same or similar character." Consequently, if the State intended at trial to seek convictions of the defendant upon various marijuana violations in June or July, 1978, the State should have charged the defendant separately for each alleged violation.

Specific allegations as to when an offense was committed are not strictly required in indictments. *W. Va. Code,* 62-2-10. However, the State in this case confronted the defendant with a number of alleged offenses for June and July, 1978, even though the indictment contained only one count. Nor did the State attempt to establish a "common scheme or plan" or other exception within the meaning of *Thomas, supra.* The numerous offenses the State attempted to establish unreasonably denied to the defendant an opportunity to prepare a defense.

The admission of evidence of various offenses allegedly committed by the defendant in June and July, 1978, was prejudicial to the defendant and reversible error.

## V.
### THE RECIDIVIST TRIAL

This Court, upon careful examination of the record, finds no error with respect to the procedure for the prosecution

of the defendant pursuant to the West Virginia habitual offender statutes, *W. Va. Code*, 61-11-18, *et seq.*[11]

---

[11] *W. Va. Code*, 61-11-18, provides as follows:

When any person is convicted of an offense and is subject to confinement in the penitentiary therefor, and it is determined, as provided in section nineteen of this article, that such person had been before convicted in the United States of a crime punishable by imprisonment in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, five years shall be added to the maximum term of imprisonment otherwise provided for under such sentence.

"When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life."

*W. Va. Code*, 61-11-19, provides as follows:

It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find out that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen of this article on a second or third conviction as the case may be.

The clerk of such court shall transmit a copy of said information to the warden of the penitentiary, together with the other papers required by the provisions of section ten, article eight [sic seven], chapter sixty-two of the Code of West Virginia, one thousand nine hundred thirty-one.

Contrary to the assertions of the defendant, the appellate process relating to the defendant's April, 1979, conviction for violation of the West Virginia Controlled Substances Act need not have been completed prior to the institution by the State of recidivist proceedings. In fact, *W. Va. Code,* 61-11-19, specifically requires that such proceedings be instituted "upon conviction and before sentence." It would not be proper, therefore, to delay the sentencing of a defendant, pursuant to the habitual offender statutes, until such time the appellate process relating to a defendant's last felony conviction has been completed.

All other issues raised by the defendant are without merit.

For the reasons stated above, the April, 1979, order of conviction of the defendant for "possession and delivery of marihuana" is hereby reversed, and the case is remanded for proceedings consistent with this opinion. Consequently, the defendant's 1979 conviction, pursuant to the habitual offender statutes is hereby set aside.

*Reversed and Remanded.*

Nothing contained herein shall be construed as repealing the provisions of section four, article eight, chapter sixty-two of the Code of West Virginia, one thousand nine hundred thirty-one, but no proceeding shall be instituted by the warden, as provided therein, if the trial court has determined the fact of former conviction or convictions as provided herein.