# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-1240** (Berkeley County 11-F-244)

**Roy Wisotzkey,**
**Defendant Below, Petitioner**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Roy Wisotzkey, by counsel Christopher J. Prezioso, appeals his convictions for felony murder, robbery in the first degree, burglary, and conspiracy to commit robbery. The Circuit Court of Berkeley County entered petitioner's sentencing order on November 7, 2013. The State of West Virginia, by counsel Cheryl K. Saville, filed a response in support of the circuit court's order, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Sometime near midnight on May 26, 2011, petitioner and his co-defendant, Joshua Stitley, went to the home of Mr. Stitley's mother and step-father, Vickie and Jack Clem, to rob them. Once there, Mr. Stitley stabbed Mr. Clem and beat him with a baseball bat. Mrs. Clem was then beaten repeatedly on her head with a baseball bat and stabbed twice in the chest; she died that night from her injuries. Early the next morning, petitioner and Mr. Stitley were arrested for these crimes. When they were searched, the Clems's property was found on Mr. Stitley's person.

Following his arrest, Mr. Stitley was taken to a hospital for emergency treatment due to his ingestion of drugs and alcohol. At the hospital, Mr. Stitley told a nurse that he "had hurt his mother."

The arresting officers took petitioner to a police station. At about 9:45 a.m., petitioner was read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and then interrogated by a police officer, Trooper Hart, for about seven minutes. Throughout this brief interview, petitioner repeatedly claimed that he had been drinking heavily the day before and could not remember anything about the preceding night.

Less than one hour after the first interview began, a second officer, Sergeant Walker, questioned petitioner for about seventy minutes. Sergeant Walker did not read petitioner the

1

*Miranda* warnings prior to his second interview. Petitioner initially told Sergeant Walker that the last thing he remembered was being at his own home in Maryland on Wednesday, May 25, 2011, where Mr. Stitley gave him two "yellow pills" and told him they were going to West Virginia. However, as the interview progressed, petitioner admitted that (1) he and Mr. Stitley went to the Clems's house because Mr. Stitley wanted to rob the Clems; (2) they entered the Clems's house with Mr. Stitley's key; (3) Mr. Clem came upon them as they were sneaking up the interior stairs of the home; (4) he (petitioner) was holding a sword that he gave to Mr. Clem; (5) Mr. Stitley was holding petitioner's baseball bat; (5) Mr. Stitley and Mr. Clem got into "a scuffle"; (6) Mr. Stitley stabbed Mr. Clem; (7) Mr. Stitley hit Mr. Clem with the bat; (8) during Mr. Stitley's fight with Mr. Clem, petitioner went into another room and "drank a whole bunch and passed out"; (9) he went with Mr. Stitley to the Clems's house because he was "a lot bigger than [Mr. Stitley]" and "looked intimidating"; (9) he did not see Mr. Stitley harm Mrs. Clem; (10) there was supposed to be no violence, only a robbery; (11) Mr. Stitley woke him the next morning and said they had to "go right now"; and (12) he presumed Mr. Stitley had robbed the Clems. At the conclusion of the second interview, petitioner orally stated that he had freely given the interview. Petitioner then signed the written statement drafted by Sergeant Walker during the interview.

In October of 2011, petitioner and Mr. Stitley were jointly indicted as follows: Count One, murder in violation of West Virginia Code § 61-2-1 (Mrs. Clem); Count Two, felony murder in violation of West Virginia Code § 61-2-1 (the underlying crime was the commission of, or the attempt to commit, first degree robbery); Count Three, first degree robbery in violation of West Virginia Code § 61-2-12(a) (Mrs. Clem); Court Four, first degree robbery in violation of West Virginia Code § 61-2-12(a) (Mr. Clem); Count Five, conspiracy to commit robbery in violation of West Virginia Code § 61-10-31; Count Six, burglary in violation of West Virginia Code § 61-3-11(a); Count Seven, attempted murder in violation of West Virginia Code § 61-11-8 (Mr. Clem); Count Eight, malicious assault in violation of West Virginia Code § 61-2-9(a) (Mr. Clem); Count Nine, assault during the commission of a felony in violation of West Virginia Code § 61-2-10 (Mr. Clem); and Count Ten, assault during the commission of a felony in violation of West Virginia Code § 61-2-10 (Mrs. Clem).

At a July 20, 2013, pre-trial hearing, the trial court denied petitioner's motion to suppress the recordings of his two police interviews and his signed statement. However, the trial court granted petitioner and Mr. Stitley's motion to sever their trials. The State elected to try petitioner first.

Petitioner's trial began on July 31, 2013. At trial, Mr. Clem testified as follows: Mr. Stitley had lived in the Clems's home; however, a few months before the crimes at issue herein, Mr. Clem had physically thrown Mr. Stitley out of the house and told him never to return. With regard to the night of the crimes, Mr. Clem testified that he heard a noise, went to investigate, and saw Mr. Stitley standing in the hallway holding a baseball bat and petitioner standing behind him holding a sword. Mr. Clem testified that he wrestled the sword away from petitioner. Mr. Stitley then hit Mr. Clem in the head with the baseball bat and the two began to wrestle. At that juncture, Mr. Stitley stabbed Mr. Clem in the groin with a knife. Mr. Stitley called out to petitioner, "I thought you were going to help me." In response, petitioner struck Mrs. Clem on the head with the baseball bat. Mr. Clem then fell into the bathroom, kicked the door shut, and begged the men not to kill Mrs. Clem. Despite his pleas, Mr. Clem could hear Mrs. Clem being

struck multiple times until she stopped moaning. Mr. Clem eventually passed out, but awoke when it was light, left the bathroom, saw his assailants asleep in the living room, and snuck out of the house. He then made his way to his neighbors' house where the police and an ambulance were called.

Sergeant Walker testified at petitioner's trial regarding the items taken from the Clems's home. The Sergeant found the following items on Mr. Stitley's person when he was arrested: Mr. Clem's 1911 nickel, key chain, and wallet; Mrs. Clem's check card, AAA Plus card, and Mountain State card; six rolls of nickels and one roll of quarters belonging to Mr. Clem; and $475.00 in United States currency which had been taken from Mr. Clem's wallet and from an ATM using Mrs. Clems's bank card. The total value of these items was about $500.00. Sergeant Walker also testified that petitioner had $3.00 on his person when he was arrested.

On August 7, 2013, a jury found petitioner guilty of Count Two (felony murder based on the underlying first degree robbery of Mrs. Clem); Count Four (first degree robbery of Mr. Clem); Count Five (conspiracy to commit robbery); and Count Six (burglary). Petitioner was acquitted of counts One, Three, Seven, Eight, and Nine.[1]

Post-trial, petitioner filed a renewed motion for a judgment of acquittal and a motion for a new trial. By order entered November 4, 2013, the circuit court denied both motions and sentenced petitioner to life in prison with the possibility of parole for felony murder, fifty years in prison for first degree robbery, not less than one nor more than five years in prison for felony conspiracy to commit robbery, and not less than one nor more than fifteen years in prison for burglary. The circuit court ordered that the sentences for felony murder and first degree robbery be served consecutively, and that the sentences for felony conspiracy and burglary be served concurrent to each other and concurrent to the sentences for felony murder and first degree robbery.

Petitioner now appeals the denial of his post-trial motions. We review such appeals under the following standards:

> """Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

Syl. Pt. 1, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Further,

> "[i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of

---

[1] The State opted not to proceed on Count Ten (assault during the commission of a felony in violation of West Virginia Code § 61-2-10 (Mrs. Clem)).

3

the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *White,* 228 W.Va. at 533, 722 S.E.2d at 569.

With regard to the standard of review for a circuit court's denial of a motion for a judgment of acquittal, we have said,

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996).

Petitioner raises four assignments of error on appeal. Petitioner first argues that the circuit court erred in failing to grant his motion for a judgment of acquittal because the State presented insufficient evidence to convict petitioner of felony murder in the first degree, robbery in the first degree, burglary, and conspiracy to commit robbery.

This Court has stated,

> "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Miller*, 204 W.Va. 374, 513 S.E.2d 147 (1998).

The circuit court denied petitioner's post-trial motions on the ground that the State entered sufficient evidence at petitioner's trial for the jury to find petitioner guilty of each crime beyond a reasonable doubt. Having reviewed the record on appeal in the light most favorable to the prosecution, we concur with the circuit court's findings in regard to each crime and address each in turn.

4

With regard to petitioner's conviction for felony murder, West Virginia Code § 61-2-1 defines murder in the first degree, in part, as "[m]urder . . . in the commission of, or attempt to commit . . . robbery . . ." However, we have distinguished felony murder from traditional first degree murder as follows:

> Unlike traditional first degree murder, felony-murder does not "require proof of the elements of malice, premeditation, or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies." Syllabus Point 7, in part, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978). Thus, the State was required to prove "(1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt." *State v. Williams*, 172 W.Va. 295, 311, 305 S.E.2d 251, 267 (1983) (citing *State v. Beale*, 104 W.Va. 617, 141 S.E. 7 (1927)).

*State v. Lanham*, 219 W.Va. 710, 715, 639 S.E.2d 802, 807 (2006). In this case, petitioner argues that, at trial, the State failed to prove that he committed, or attempted to commit, the underlying first degree robbery of Mrs. Clem and, as a result, failed to prove felony murder.

This Court has established that "[a]t common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." Syl. Pt. 1, *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981). Also under the common law, "robbery could be accomplished either by actual physical force or violence inflicted on the victim or by intimidating the victim by placing him in fear of bodily injury." Syl. Pt. 2, *id.* While there were no degrees or grades of robbery at common law, the Legislature has codified two degrees of robbery, first and second degree robbery. First degree robbery is set forth at West Virginia Code § 61–2–12(a) and, is defined, in relevant part, as

> [a]ny person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree. . . .

Pursuant to this definition, we find that the State presented sufficient evidence at trial for the jury to find beyond a reasonable doubt that petitioner attempted or committed the first degree robbery of Mrs. Clem. At petitioner's trial, Mr. Clem's testimony established that petitioner struck Mrs. Clem in the head with the baseball bat. Further, in his statement to Sergeant Walker, petitioner admitted that he went to the Clems's home, with a sword and baseball bat, for the purpose of robbing them. Finally, when petitioner and Mr. Stitley were arrested, the police found Mrs. Clem's property. Therefore, given that the State presented sufficient evidence for the jury to find petitioner guilty of the first degree robbery of Mrs. Clem, we find that the jury had sufficient evidence to find petitioner guilty of felony murder beyond a reasonable doubt.

The State also presented sufficient evidence for the jury to have found petitioner guilty beyond a reasonable doubt of the first degree robbery of *Mr.* Clem. Mr. Clem testified that when he came upon petitioner on the night of the crime, petitioner was holding a sword. Mr. Clem also testified that he wrestled with petitioner for possession of the sword. Petitioner's use of the sword, a potentially lethal weapon, clearly established the threat of deadly force.

With regard to petitioner's burglary conviction, the State presented sufficient evidence for the jury to find petitioner guilty of burglary beyond a reasonable doubt. West Virginia Code § 61-3-11(a), in relevant part, defines burglary as follows: "If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary."

The State presented evidence at petitioner's trial that showed petitioner and Mr. Stitley entered the Clems's home, without breaking, at midnight, with the intent to commit a crime. Consequently, petitioner's burglary conviction must be upheld.

Finally, the record on appeal shows that the State presented sufficient evidence for the jury to find, beyond a reasonable doubt, that petitioner conspired with Mr. Stitley to commit robbery. West Virginia Code § 61-10-31 provides that

> [i]t shall be unlawful for two or more persons to conspire (1) to commit any offense against the State or (2) to defraud the State, the state or any county board of education, or any county or municipality of the State, if, in either case, one or more of such persons does any act to effect the object of the conspiracy.

Petitioner admitted to Sergeant Walker that he and petitioner went to the Clems's home to rob them. In furtherance of this act, both men drove to the Clems's home bearing petitioner's sword and bat. Mr. Clem's testimony with regard to petitioner's use of the sword and the bat firmly established that petitioner acted in concert with Mr. Stitley during the robbery. As such, petitioner's conviction for conspiracy to commit robbery must be upheld.

Petitioner's second assignment of error is that the circuit court abused its discretion in denying his motion for a new trial where the circuit court improperly denied his proposed petit larceny jury instruction. Petitioner claims that instruction should have been given to the jury because petit larceny is a lesser-included offense of robbery, and the value of the items taken from the Clems's home was about $500. *See* West Virginia Code § 61-3-13.[2] Petitioner

---

[2] West Virginia Code § 61-3-13 provides as follows:

> (a) If a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny . . . .

highlights that if he had been convicted of misdemeanor petit larceny, instead of robbery, he could not have been convicted of felony murder based on the robbery conviction.

West Virginia Code § 61-3-13(b) defines petit larceny as follows: "If a person commits simple larceny of goods or chattels of the value of less than one thousand dollars, such person is guilty of a misdemeanor, designated petit larceny. . . ." Petit larceny is the taking of property without violence. However, in this case, the taking of the Clems's property was accompanied by violence. We have said, "Instructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971). Given that no evidence was entered at petitioner's trial showing that petitioner took any of the Clems's property prior to his use of violence, we find that the circuit court did not err in denying petitioner's petit larceny instruction because it was not supported by the evidence at trial.

Petitioner's third assignment of error is that the circuit court abused its discretion in failing to suppress petitioner's statements to the police on the following five grounds. First, petitioner claims that he was so intoxicated during the interviews that his waiver of rights cannot be considered voluntary, knowing, and intelligent. Second, petitioner contends that he was coerced into making a statement because Sergeant Walker put "serious pressure" on him. Third, petitioner avers that his statements were wrongfully coerced with promises of leniency. Fourth, petitioner alleges that Sergeant Walker wrongfully failed to stop the interview when petitioner asked for counsel. Fifth and last, petitioner asserts that, even though he was read his *Miranda* rights prior to his first interview, Sergeant Walker wrongfully failed to repeat them at the start of his second interview.

We review an appeal on a motion to suppress under the following standard:

"When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 13, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011).

In regard to petitioner's intoxication claim, we have said that, "[a] claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive his rights, the confession will not be rendered inadmissible." Syl. Pt. 1, *State v Hall*, 174 W.Va. 599, 328 S.E.2d 206 (1985). Here, although petitioner claimed to have been

---

(b) If a person commits simple larceny of goods or chattels of the value of less than one thousand dollars, such person is guilty of a misdemeanor, designated petit larceny. . . .

drinking heavily prior to the interviews, the record on appeal does not support petitioner's claim that he was so intoxicated that he obviously lacked the requisite capacity to waive his rights. For example, after Trooper Hart read petitioner his *Miranda* rights at the start of the first interview and advised petitioner about the nature of the questions he would be asked, the Trooper said, "And you are okay and you're voluntarily going to answer some questions for me?" Petitioner answered, "Yeah . . . that's fine." Thus, by his own words, petitioner claimed an understanding and voluntary waiver of his *Miranda* rights. Further, petitioner was not so intoxicated that he was unable to lie throughout the first interview and well into the second interview when he said he did not remember anything about the crimes. Moreover, once petitioner began telling the truth, he was able to give a detailed account of his and Mr. Stitley's criminal behavior. Therefore, upon viewing this evidence in the light most favorable to the State, we find that the circuit court did not err in denying petitioner's motion to suppress his statements on the ground of intoxication.

Turning to petitioner's coercion arguments, petitioner relies on the following three statements made by Sergeant Walker, in support of his claim. First, Sergeant Walker advised petitioner that if he did not cooperate, life as he knew it could "come to an end," that he could "go away," and that it was "your own ass right now."

This Court has said, "[w]hether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances." Syl. Pt. 2, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995). Here, the recording of petitioner's second interview shows that Sergeant Walker did not create a coercive environment during his interview of petitioner. For example, at one point during the interview, Sergeant Walker offered to leave the interview room so petitioner could compose himself. However, petitioner asked him to remain in the room. Further, at the conclusion of the interview, Sergeant Walker urged petitioner to read the statement the Sergeant had drafted during the interview for truth and accuracy, and then offered to read the statement to petitioner. Sergeant Walker then left the room to give petitioner time to read and review the statement, at which time, petitioner signed the statement. As for Sergeant Walker's statements that petitioner's life could change or he could "go away," they were accurate statements that petitioner was potentially facing prison time for his crimes. As for the statement, this is "your own ass right now," the Sergeant was clearly encouraging petitioner to think less about Mr. Stitley's reaction to petitioner's confession, and more about his own situation.

Petitioner also contends that he was coerced by Sergeant Walker's following promises of leniency:

> "If you can remember it will help me out. It will only look good for you. What happened last night, bud?"

> "Come on, Roy. Do you want to help yourself out or not? . . . . Do you want to help yourself out, Roy? It's a yes or no answer."

> "I would be scared to death too. But if you're honest with me, I will take that into consideration, okay."

8

[W]hat you're telling me is going to help you. . . . "

These statements clearly show that Sergeant Walker never promised petitioner that he would receive leniency from a court of law if he confessed. Thus, based on the totality of the circumstances in this case, we find that the circuit court did not err in denying petitioner's motion to suppress on the ground that his statements were coerced.

As for petitioner's claim that Sergeant Walker should have stopped the interview because petitioner "requested counsel," we highlight the following exchange during petitioner's second interview:

Sergeant Walker: So you remember watching that right?

Petitioner: Vaguely, yes. I should have a lawyer, shouldn't I?

Sergeant Walker: That's up to you, sir.

Petitioner: I don't know how this works.

Sergeant Walker: This is how it works. You need to tell me what happened. If you did nothing wrong, I need to know. That's why I need to know what happened. Talk to me. So what else happened yesterday? Tell me what happened. . . .

It is well settled law that "'[o]nce an accused asks for counsel during [a] custodial interrogation, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations.' Syl. Pt. 2, *State v. Bowyer*, 181 W.Va. 26, 380 S.E.2d 193 (1989)." Syl. Pt. 1, *State v. Kilmer*, 190 W.Va. 617, 439 S.E.2d 881 (1993). However, this rule applies only if nothing about the request renders it ambiguous.

> Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together.

*Smith v. Illinois*, 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984).

*Kilmer* at 624-25, 439 S.E.2d at 888-89. Here, petitioner did not assert his right to counsel. Instead, he merely asked, "I should have a lawyer, shouldn't I?" Given that petitioner's statement was ambiguous, Sergeant Walker was under no obligation to stop the interview, nor was it Sergeant Walker's place to advise petitioner regarding whether he should retain counsel. As such, the circuit court did not err in denying petitioner's motion to suppress on this ground.

With regard to petitioner's claim that Sergeant Walker should have read the *Miranda* warnings at the start of his second interview, we have said,

> In determining whether the initial *Miranda* warnings have become so stale as to dilute their effectiveness so that renewed warnings should have been given due to a lapse in the process of interrogation, the following totality-of-the-circumstances criteria should be considered: (1) the length of time between the giving of the first warnings and subsequent interrogation; (2) whether the warnings and the subsequent interrogation were given in the same or different places; (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers; (4) the extent to which the subsequent statement differed from any previous statements; and (5) the apparent intellectual and emotional state of the suspect.

Syl. Pt. 5, *State v. DeWeese*, 213 W.Va. 339, 582 S.E.2d 786 (2003). In regard to the *Deweese* factors, we first note that the second interview began less than forty-five minutes after the first interview ended and both interviews were conducted in the same room. Further, in both interviews, petitioner claimed that he could not remember any of the events from the previous evening. Finally, as for petitioner's intellectual/emotional state, as we noted above, he was capable of understanding and waiving his *Miranda* rights during the first interview and acknowledged at the end of his second interview that his statement was freely given. Based on the totality of these circumstances, we find that the circuit court did not err in denying petitioner's motion to suppress his statements on *Miranda* grounds.

Petitioner's fourth and final assignment of error is that the circuit court erred in allowing the State to proceed to trial on two separate robbery counts: (1) felony murder based on the robbery of Mrs. Clem, and (2) the robbery of Mr. Clem.

Petitioner was indicted on two separate counts of robbery, one for the robbery of Mrs. Clem and the other for robbery of Mr. Clem. However, when the State elected to proceed under the count of felony murder, the robbery charge regarding Mrs. Clem was properly subsumed into the felony murder charge. As we have said, "[w]hen a defendant commits two separate aggravated robberies, and in the course thereof kills one of the victims, he can be convicted of both the aggravated robbery of one victim and the felony murder of the other." Syl., *State ex rel. Lehman v. Strickler*, 174 W.Va. 809, 329 S.E.2d 882 (1985). Further, in Syllabus Point 3 of *State v. Elliott*, 186 W.Va. 361, 412 S.E.2d 762 (1991), we concluded that

> [w]here there is more than one underlying felony supporting a felony murder conviction and one of the underlying felonies is committed upon a separate and distinct victim from the victim who was actually murdered, that underlying felony conviction does not merge with the felony murder conviction for the purposes of double jeopardy.

Therefore, the circuit court did not err in allowing the State to proceed to trial on the two separate robbery counts.

10

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II